No. 23-60022

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re Robert Brower, Sr.

Bankr. Case No. 5:15-bk-50801-MEH
Adv. Case No. 5:21-ap-05029-MEH

MICHAEL G. KASOLAS, LIQUIDATING TRUSTEE FOR THE ROBERT

BROWER, SR. LIQUIDATING TRUST,

Appellant,

v.

AURORA CAPITAL ADVISORS, et al.,

Appellees.

On Appeal from the Bankruptcy Appellate Panel for the Central District of
California, Case No. 22-1215

## APPELLANT'S OPENING BRIEF

Steven T. Gubner – Bar No. 156593
Jason B. Komorsky – Bar No. 155677
Jessica L. Bagdanov – Bar No. 281020
Jessica S. Wellington – Bar No. 324477
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Tel: 818-827-9000
Fax: 818-827-9099
sgubner@bg.law
jkomorsky@bg.law
jbagdanov@bg.law
jwellington@bg.law

## **TABLE OF CONTENTS**

Page

I.  STATEMENT OF JURISDICTION ....................................................1

II.  STATEMENT OF ISSUES ON APPEAL AND STANDARD OF REVIEW ..1

III.  STATEMENT OF THE CASE ........................................................3

    A.  Overview of the Action ....................................................3

    B.  Facts Giving Rise to the Complaint ......................................4

    C.  The Bankruptcy Court's Judgment and BAP Appeal ..........................8

IV. SUMMARY OF ARGUMENT ......................................................12

V.  ARGUMENT ........................................................................15

    A.  Civil Rule 12(b)(6) Standard ..............................................15

    B.  The Trustee Adequately Pled that the Debtor's Estate was the
Equitable Owner of the Net Proceeds as a Result of a Liquidation
Event ....................................................................15

        1.  The Scope of Property Rights Included in an Estate is Broad.. 15

        2.  Shareholder Property Rights Under California Law .................. 17

        3.  No Remaining Contingency Existed as of the Sale
of the Wine Estate Property; the Estate Held a Direct
Right to a Distribution ........................................ 21

    C.  Receipt of Net Proceeds is Not Required Under California Law to
Vest a Property Right in Dividends ......................................25

    D.  Coastal Was the Debtor's Alter Ego; It Was Estate Property.............30

        1.  Alter Ego is a Remedy Available to the Trustee ........................ 30

        2.  The Lower Courts Misapplied California Authority
on the Use of Alter Ego ........................................ 31

        3.  The Complaint Adequately Pled Alter Ego ................................ 32

    E.  Debtor's Sole Control of Coastal is Sufficient to Show the Estate's
Ownership of Coastal ....................................................34

        1.  Control Indicates Ownership.......................................... 34

# TABLE OF CONTENTS (cont'd)

Page

      2.    Corporation Wholly Owned by the Debtor
            Belongs to the Estate` ........................................................ 35

      3.    The Estate May Recover from Third Parties
            Where the Debtor De-Valued Coastal ............................. 39

   F.    Even if the Net Proceeds are Not Property of the Estate, the
       Complaint Adequately Pleads a Claim for Conversion ...................... 41

VI.   CONCLUSION ...................................................................... 42

VII.  CERTIFICATION AS TO INTERESTED PARTIES .................................. 43

VIII. STATEMENT OF RELATED CASES ........................................................ 44

IX.   CERTIFICATION OF COMPLIANCE .......................................................... 44

# TABLE OF AUTHORITIES

Page

## Cases

*2 Kent*,
288-9 ...................................................................................................19

*Alisa v. Comm'r*,
35 T.C.M. (CCH) 1113 (T.C. 1976) ..................................................25

*Alta Berkeley VI C.V. v. Omneon, Inc.*,
41 A.3d 381 (Del. 2012) ....................................................................22

*Associated Vendors, Inc. v. Oakland Meat Co., Inc.*,
210 Cal. App. 2d 825 (1962) .............................................................33

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................15

*Butner v. United States*,
440 U.S. 48 (1979).............................................................................17

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d 336 (9th Cir. 1996) ...............................................................15

*Chantel v. Pierce*,
2015 WL 3988985 (9th Cir. BAP July 1, 2015),
aff'd, 693 F. App'x 723 (9th Cir. 2017) .............................................30

*City of Oakland v. Carpentier*,
13 Cal. 545 (1859) .............................................................................19

*Curci Investments, LLC v. Baldwin*,
14 Cal. App. 5th 214 (2017) ..............................................................32

*Dougherty v. Foley*,
32 Cal. 402 (1867) .............................................................................19

*DZ Bank AG Deutsche Zentral-Genossenschaft Bank v. Meyer*,
869 F.3d 839 (9th Cir. 2017) ....................................................... 39, 40

*Estate of Mitchell*,
76 Cal. App. 4th 1378 (1999) ........................................................ 3, 18

*Fayer v. Vaughn*,
649 F.3d 1061 (9th Cir. 2011) ...........................................................15

*First Avenue W. Building, LLC v. James (In re Onecast Media, Inc.)*,
439 F.3d 558 (9th Cir. 2006) ...............................................................2

*Fowler v. Shadel*,
400 F.3d 1016 (7th Cir. 2005) ..................................................... 12, 39

# TABLE OF AUTHORITIES (cont'd)

Page

## Cases

*Freeman v. DirecTV, Inc.*,
457 F.3d 1001 (9th Cir. 2006) ..................................................2

*G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Services, Inc.*,
958 F.2d 896 (9th Cir. 1992) ...................................................41

*Global W. Dev. Corp. v. Northern Orange County Credit Serv., Inc.*,
759 F.2d 724(9th Cir.1985) ....................................................29

*In re Anderson*,
572 B.R. 743 (B.A.P. 9th Cir. 2017) .......................................3

*In re Baker*,
68 B.R. 360 (D. Or. 1986) ................................................ 34, 35

*In re Beshears,*
196 B.R. 464 (Bankr. E.D. Ark. 1996) ...................................36

*In re Bialac*,
712 F.2d 426 (9th Cir. 1983) ........................................... 16, 19

*In re Downs*, case no. 16-12589,
2020 WL 7483142 (Bankr. C.D. Cal. Nov. 17, 2020)........................18

*In re Fitness Holdings*,
714 F.3d 1141 (9th Cir. 2013) ...............................................15

*In re Giant Gray, Inc.*,
629 B.R. 814 (Bankr. S.D. Tex. 2020) ...................................17

*In re Hill*,
265 B.R. 296 (Bankr. M.D. Fla. 2001) ...................................36

*In re Hollingsworth,*
224 B.R. 822 (Bankr. M.D. Fla. 1998) ...................................36

*In re Mihranian*,
2017 WL 2775043 (9th Cir. BAP June 29, 2017) ...................... 31, 32

*In re Milden*,
111 F.3d 138 (9th Cir. 1997) ...............................................34

*In re Mosher*,
417 B.R. 772 (Bankr. N.D. Ill. 2009) .....................................38

*In re Nickeson*,
2014 WL 6686524 (Bankr. D.S.D. Nov. 25, 2014)...................... 39, 40

iv

## TABLE OF AUTHORITIES (cont'd)

Page

### Cases

*In re Pisculli*,
  2009 WL 700059 (Bankr. E.D.N.Y. Mar. 4, 2009)
  aff'd, 426 B.R. 52 (E.D.N.Y. 2010),
  aff'd, 408 F. App'x 477 (2d Cir. 2011).................................................14

*In re Pisculli*,
  408 F. App'x. 477 (2d Cir. 2011) ........................................................38

*In re Pisculli*,
  426 B.R. 52 (E.D.N.Y. 2010) ..............................................................38

*In re Retz*,
  606 F.3d 1189 (9th Cir. 2010) ...............................................................1

*In re Schwarzkopf*,
  626 F.3d 1032 (9th Cir. 2010) .............................................................33

*In re Singh*,
  2019 WL 1231146 (B.A.P. 9th Cir. Mar. 14, 2019).............................. 13, 30, 33

*In re Thurman*,
  901 F.2d 839 (10th Cir. 1990) .............................................................39

*In re United Energy Corp.*,
  944 F.2d 589 (9th Cir. 1991) ...............................................................29

*In re Veal*,
  450 B.R. 897 (9th Cir. BAP 2011) .........................................................2

*In re Walhof Properties, LLC*,
  613 B.R. 479 (Bankr. M.D. Fla. 2020) .................................................36

*In re Whittick*,
  547 B.R. 628 (Bankr. D.N.J. 2016) ......................................................17

*In re Yona*,
  2017 WL 2491493 (C.D. Cal. June 8, 2017)................................. 34, 36

*In re: Plaza De Retiro, Inc.*,
  2018 WL 5304724 (Bankr. D. NM Oct. 24, 2018) ...............................21

*Int'l Fin. Servs. Corp. v. Chromas Techs. Can., Inc.*,
  356 F.3d 731 (7th Cir.2004) ................................................................30

*ITT–Industrial Credit Co. v. Hughes*,
  594 F.2d 384 (4th Cir.1979) ................................................................29

# <u>TABLE OF AUTHORITIES</u>

Page

## <u>Cases</u>

*Kim v. Westmoore Partners, Inc.*,
    201 Cal. App. 4th 267 (2011) ...............................................................41

*Kline Hawkes California SBIC, L.P.*,
    117 Cal. App. 4th 183 (2004) ..................................................... 19, 22

*McCarthy, Johnson & Miller v. N. Bay Plumbing, Inc. (In re Pettit)*,
    217 F.3d 1072 (9th Cir. 2000) ..............................................................17

*McKell v. Washington Mutual, Inc.*,
    142 Cal.App.4th 1457(2006) ................................................................41

*Meyers v. El Tejon Oil & Refining Co.*,
    29 Cal. 2d 184 (1946) ............................................................ 20, 21, 40

*Miller v. McColgan*,
    17 Cal. 2d 432 (1941) ........................................... 3, 17, 20, 21, 25, 38

*Movsesian v. Victoria Versicherung AG*,
    670 F.3d 1067 (9th Cir. 2012) ................................................................2

*Nasser v. United States*,
    257 F. Supp. 443 (N.D. Cal. 1966) ............................................... 13, 26

*Nichols v. Birdsell*,
    491 F.3d 987 (9th Cir. 2007) ...............................................................16

*Ohio v. Collins (In re Madeline Marie Nursing Homes)*,
    694 F.2d 433 (6th Cir.1982) .................................................................29

*Penasquitos, Inc. v. Super. Ct.*,
    53 Cal. 3d 1180 (1991) .........................................................................23

*Postal Instant Press, Inc. v. Kaswa Corp.*,
    162 Cal. App. 4th 1510 (2008) ............................................................32

*Reilly v. Antonello*,
    852 N.W.2d 694 (Minn. Ct. App. 2014)...............................................39

*Rice v. Downs*,
    73 Cal. App. 5th 213 (2021) ......................................... 26, 27, 28, 29

*Scottsdale Ins. Co. v. Nationwide Med., Inc.*,
    2017 WL 8948063 (C.D. Cal. Dec. 13, 2017)............................. 14, 42

*Segal v. Rochelle*,
    382 U.S. 375 (1966)..............................................................................16

# TABLE OF AUTHORITIES

Page

## Cases

*Smith v. Taecker*,
133 Cal. App. 351 (1933) ...................................................................20

*Sonora Diamond Corp. v. Superior Court*,
83 Cal. App. 4th 523 (2000) ..............................................................33

*Stephenson v. Drever*,
16 Cal. 4th 1167 (1997) ..................................................... 12, 20, 21

*Stout v. Marshack*,
649 F. App'x 621 (9th Cir. 2016) ..................................... 13, 30

*Suhl v. Bumb*,
348 F.2d 869 (9th Cir.1965), *cert. denied,*
382 U.S. 938 (U.S. Dec. 6, 1965) .......................................13

*Swierkiewicz v. Sorema N. A.*,
534 U.S. 506 (2002) ...........................................................15

*Tracht Gut, LLC v. L.A. Cnty. Treasurer & Tax Collector (In re Tracht Gut, LLC)*,
836 F.3d 1146 (9th Cir. 2016) ...............................................1

*U.S. v. Hinkson*,
585 F.3d 1247 (9th Cir. 2009) ...............................................2

*Unite Here Health v. Gilbert*,
2014 WL 2527121 (D. Nev. June 4, 2014).............................13

*Vu v. California Commerce Club, Inc.*,
58 Cal.App.4th 229 (1997) ....................................................41

*Wallace v. Mayor of San José*,
29 Cal. 180 (1865) ................................................................20

*Wiand v. Lee*,
753 F.3d 1194 (11th Cir. 2014) ................................... 39, 40

*Wood v. Elling Corp.*,
572 P.2d 755 (1977).............................................................33

vii

# TABLE OF AUTHORITIES

Page

**Statutes**

11 U.S.C.,
Section 541(a)(1) ............................................................... 13, 16, 34, 41

11 U.S.C.,
Section 541(a)(6) ................................................................. 12, 16, 17

11 U.S.C.,
Section 541(a)(7) ............................................................ 12, 16, 17, 25

11 U.S.C.,
Section 549 ......................................................................... 8, 16, 31, 36

11 U.S.C.,
Section 727(a)(2)(A) ................................................................ 32, 36

28 U.S.C.,
Section 1334 ..................................................................................... 1

28 U.S.C.,
Section 157 ........................................................................................ 1

28 U.S.C.,
Section 158(b) ................................................................................... 1

28 U.S.C.,
Section 158(d) ................................................................................... 1

California Corporations Code,
Section 166 ..................................................................................... 29

**Rules**

Federal Rules of Appellate Procedure,
Rule 4(a)(1)(A) ................................................................................. 1

Federal Rules of Bankruptcy Procedure,
Rule 2015.3 ...................................................................................... 5

Federal Rules of Civil Procedure,
Rule 12(b)(6) .................................................................... 2, 8, 10, 15

Federal Rules of Civil Procedure,
Rule 54(b) ................................................................................... 1, 11

# I.

## STATEMENT OF JURISDICTION

Michael G. Kasolas, the Liquidating Trustee for the Robert Brower, Sr. Liquidating Trust (the "Trustee"), hereby submits his opening brief in support of his appeal of the bankruptcy court's *Partial Final Judgment* (the "Judgment"), entered on October 6, 2022 [**1-ER-28-30**], which Judgment was affirmed by the Bankruptcy Appellate Panel for the Ninth Circuit ("BAP") [**1-ER-2**].

The bankruptcy court had jurisdiction over the Debtor's Chapter 11 case, the underlying adversary proceeding, and over the Judgment giving rise to this appeal pursuant to 28 U.S.C. §§ 157 and 1334. The appeal was properly heard by the BAP based on 28 U.S.C. § 158(b), and similarly, this Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(d). The appeal was timely filed within 30 days of entry of the BAP's decision affirming the Judgment. Fed. R. App. P. 4(a)(1)(A). The Judgment is a certified partial final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure (the "Civil Rules"), appropriate for this Court's consideration on appeal.

# II.

## STATEMENT OF ISSUES ON APPEAL AND STANDARD OF REVIEW

This Court reviews decisions of the BAP de novo and applies the same standard of review applied by the BAP to the bankruptcy court's decision. *Tracht Gut, LLC v. L.A. Cnty. Treasurer & Tax Collector (In re Tracht Gut, LLC)*, 836 F.3d 1146, 1150 (9th Cir. 2016) (citing *Retz v. Samson (In re Retz),* 606 F.3d 1189, 1196 (9th Cir. 2010)). The Trustee submits that the issues presented on appeal, and the applicable standards of review, are as follows:

**Issue No. 1:** Whether the bankruptcy court erred by granting with prejudice the motions to dismiss the Second Amended Complaint filed by the appellees, and prior to that, the First Amended Complaint.

1

**Standard of Review of Issue No. 1:**  A bankruptcy court's decision to grant a motion to dismiss for failure to state a claim under Civil Rule 12(b)(6) is reviewed de novo.  *Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067, 1071 (9th Cir. 2012) (en banc).  De novo review means that the review is independent, with no deference given to the bankruptcy court's conclusions, as if no decision previously had been rendered.  *First Avenue W. Building, LLC v. James (In re Onecast Media, Inc.)*, 439 F.3d 558, 561 (9th Cir. 2006); *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004 (9th Cir. 2006).

A bankruptcy court's dismissal of a complaint without leave to amend is reviewed for abuse of discretion.  *In re Tracht Gut, LLC*, 836 F.3d at 1150.  The abuse of discretion test has two prongs: "first, whether the court applied the correct legal standard; and second, whether the factual findings supporting the legal analysis were clearly erroneous."  *In re Veal*, 450 B.R. 897, 915 (B.A.P. 9th Cir. 2011) (citing *U.S. v. Hinkson*, 585 F.3d 1247, 1261–63 (9th Cir. 2009) (en banc)).  Where the bankruptcy court has failed to apply the correct legal standard, "it has 'necessarily abuse[d] its discretion.'"  *Id.* (citing *Hinkson,* 585 F.3d at 1261–63) (modifications in original).  The first prong is reviewed de novo.  *Id.*  If the bankruptcy court has applied the correct legal standard, "the inquiry then moves to whether the factual findings made were clearly erroneous."  *Id.* (citing *Hinkson,* 585 F.3d at 1262).  A bankruptcy court's findings are clearly erroneous if they are "'illogical, implausible, or without support in inferences that may be drawn from the record.'"  *Id.* (citing *Hinkson,* 585 F.3d at 1263).

**Issue No. 2:**  Whether the bankruptcy court erred by concluding that the Second Amended Complaint (and prior thereto, the First Amended Complaint) failed to adequately plead that net proceeds from a Liquidation Event as defined in the operative Amended and Restated Articles of Incorporation (the "Articles") of

2

the Debtor's wholly-owned, non-operating corporation were property of the Debtor's bankruptcy estate.

**Standard of Review of Issue No. 2:** Whether an asset is estate property is a conclusion of law reviewed de novo. *In re Anderson*, 572 B.R. 743, 747 (B.A.P. 9th Cir. 2017).

**Issue No. 3:** Whether the bankruptcy court erred by concluding that alter ego does not provide a cognizable theory for assets of the Debtor's wholly owned, non-operating corporation to become property of the Debtor's bankruptcy estate.

**Standard of Review of Issue No. 3:** Whether an asset is estate property is a conclusion of law reviewed de novo. *Anderson*, 572 B.R. at 747.

### III.

### STATEMENT OF THE CASE

#### A.    Overview of the Action

A shareholder's mere "expectancy" interest in the assets of a corporation is not an enforceable right. California law and a corporation's articles identify contingent events, however, that upon their occurrence convert the expectancy interest into a vested property right. *See Miller v. McColgan*, 17 Cal. 2d 432, 436 (1941); *Estate of Mitchell*, 76 Cal. App. 4th 1378, 1392 (1999). The instant appeal concerns this distinction. Whether a chapter 11 estate's rights to net proceeds from the sale of all assets by a non-operating wholly-owned corporation, which sale was a defined contingent event in the corporation's Articles converted the Debtor's expectancy interest into a vested right to the sale proceeds. Specifically, the order on appeal dismissed the Trustee's complaint at the pleading stage with prejudice, which complaint sought recovery of approximately $7 million from insider and otherwise friendly third parties who improperly received those funds to the material detriment of the Estate's legitimate creditors.

3

The Trustee seeks to recover those siphoned funds for the benefit of the Estate and its creditors under multiple legal theories, including avoidable transfers and conversion. As discussed in detail, *infra*, the Trustee adequately pled these claims in the alternative, as well as a recognized alter ego theory; if the Net Proceeds are Estate property the defendants are in receipt of avoidable transfers (sections V.B–E), and even if the Net Proceeds are not directly property of the Estate, the Estate may still recover from the defendants on at least a conversion theory (section V.F). The current result permits the Debtor to pilfer the Estate for the benefit of his family and friends and to the detriment of the Estate's arm's length creditors.

**B.      Facts Giving Rise to the Complaint**

On March 11, 2015 (the "Petition Date"), Robert Brower, Sr. (the "Debtor") filed a voluntary chapter 11 petition, commencing the underlying bankruptcy case, Case No. 15-50801-MEH, still pending in the United States Bankruptcy Court for the Northern District of California, San Jose Division (the "Bankruptcy Case"). In his Schedule B, the Debtor listed an interest in shares in Coastal Cypress Corporation ("Coastal"). **5-ER-803**.[1] The Debtor did not exempt his shares in Coastal. **5-ER-805**. Debtor and his wife, Patricia Brower, were the only directors of Coastal. **2-ER-100, ¶** 38. Although the Debtor valued his shares as "unknown," the shares in Coastal were the primary asset of the Debtor's bankruptcy estate (the "Estate"). **4-ER-773.**

Through an adversary proceeding commenced by MUFG Union Bank, N.A. (the "Bank"), the bankruptcy court determined that the Debtor was the 100% shareholder of Coastal as of the Petition Date, rejecting the Debtor's assertions that he only held a 24% interest in Coastal and that third parties, including some of the

---

[1] Unless otherwise stated, all page citations refer to the bate stamp on the bottom right-hand corner of the ER.

appellees, held the remaining shares. *See* **4-ER-647–655**; **4-ER-656–672**. Accordingly, 100% of the shares in Coastal and the rights and interests attendant to the shares were property of the Estate.

Debtor formed Coastal in the early 1980's for the purpose of holding title to real property located at 8890 and 8940 Carmel Valley Road in Carmel, California (the "Wine Estate Property"). **2-ER-125**, ¶ 1. Almost immediately after filing for bankruptcy, the Debtor sold the Wine Estate Property. **2-ER-102**, ¶ 46. After providing for payment of all of Coastal's then existing creditors, the sale resulted in net proceeds, of approximately $7 million (the "Net Proceeds"). **2-ER-93**, ¶ 4. The Wine Estate Property was Coastal's sole asset [**2-ER-93**, ¶¶ 4, 5; **2-ER-111**, ¶ 87], and as recognized by the bankruptcy court, Coastal was merely "a holding company that didn't actually have operations." **2-ER-97–98**, ¶ 21; **4-ER-763**. After the sale of the Wine Estate Property, Coastal was merely a bank account holding the Net Proceeds as recognized by the bankruptcy court. **4-ER-739–742**; **4-ER-763–7764**; **2-ER-93**, ¶¶ 4, 5; **2-ER-111**, ¶ 87.

Although the sale of the Wine Estate Property closed in April 2015, the Debtor repeatedly filed misleading periodic FRBP 2015.3 reports in the Bankruptcy Case stating that the sale was not complete (the "Periodic Reports"). **2-ER-95**, ¶ 11; **2-ER-112–113**, ¶¶ 91–94; **2-ER-151–196**, Exhibits 2 through 5. As stated in the Periodic Reports, the Debtor recognized (and so advised the bankruptcy court) that as a result of the Liquidation Event Coastal had no discretion to use the Net Proceeds but could only do so if the lone shareholder (*i.e.*, the Estate) approved (*i.e.*, consented to) a new business plan. **2-ER-112–113**, ¶¶ 92–93; **2-ER-172**; **2-ER-184**; **2-ER-194**.

On November 6, 2017, the Bank (the Estate's largest creditor) confirmed its chapter 11 plan of reorganization in the Bankruptcy Case (the "Plan"). *See* **4-ER-673–678**; **4-ER-679–730**. "The Plan provides for the appointment of a Liquidating

Trustee with the power to prosecute claims on behalf of Debtor's bankruptcy estate." **1-ER-65**.  However, the Plan provided that the liquidating trustee's powers and duties would accrue in two stages.  First, on or after the confirmation date, the Plan provided that the liquidating trustee "will have the power and authority to market the Debtor's assets for sale." **4-ER-684**.  Second, on the effective date of the Plan, the Plan provided that the liquidating trustee will additionally have the power and authority to liquidate all of the Estate's assets, including all litigation claims belonging to the Estate.  **4-ER-684–685**.  The effective date of the Plan was September 15, 2020 (the "Effective Date").  **4-ER-645–646**.  The Trustee was appointed pursuant to the Plan, in which capacity he continues to serve.  **2-ER-97**, ¶¶ 18–19.

The postpetition sale of the Wine Estate Property constituted a defined "Liquidation Event" under Coastal's operative Articles because the sale comprised all of Coastal's assets.[2] **2-ER-94**, ¶ 6; **2-ER-110**, ¶ 83; **2-ER-145**.  Upon such Liquidation Event, the Articles provided that the Net Proceeds (net of then-existing legitimate creditor claims) <u>shall</u> be distributed to Coastal's shareholders—*i.e.*, the Estate.  **2-ER-145**.  However, despite this unambiguous requirement in Coastal's Articles, the Estate did not receive any such distribution.  Instead, the Debtor used the Net Proceeds as his personal piggybank for his and his wife's benefit and to enrich, among others, his son, two California suspended corporations owned by the

---

[2] The Articles enumerate four Liquidation Events, including:

> a "Liquidation Event" shall be deemed to be occasioned by, or to include, . . . (D) *a sale*, lease, exclusive license or other disposition *of all or substantially all of the assets*, technology or intellectual property of the corporation including, without limitation, any such transaction with a direct or indirect subsidiary of the corporation.

**2-ER-145** (emphases added).  In turn Section 2, Liquidation Preference, is triggered by a Liquidation Event and mandates distribution of the liquidated assets to shareholders.  *Id.*

Debtor's friends (who had falsely claimed an ownership interest in Coastal), and his personal lawyers. **2-ER-95–96**, ¶ 12; **2-ER-109**, ¶ 79; **2-ER-115–130**, ¶¶ 104, 105, 107–176. The Debtor consistently disregarded corporate formalities (such as obtaining shareholder approval) and Coastal's separateness and freely used Coastal's assets for his own personal use, including using a portion of the Net Proceeds to purchase a residence for himself (the "Delaware Property"). **2-ER-102–103**, ¶¶ 49, 50; **2-ER-114**, ¶ 100. After the Effective Date, the Delaware Property was returned to the Trustee because the purchase was an improper postpetition transfer. **2-ER-114**, ¶ 100.

None of the postpetition transfers of the Net Proceeds were made with bankruptcy court approval nor were they made in the ordinary course of Coastal's business, as Coastal ceased operations years earlier. **2-ER-94–96**, ¶¶ 7, 10, 12; **2-ER-106**, ¶ 68. Additionally, the postpetition transfers were not in satisfaction of legitimate debts owed to the recipients at the time of the sale of the Wine Estate Property. Rather, the Debtor effectively schemed to transfer the Net Proceeds away from the Estate outside the purview of the bankruptcy court to the appellees, among others, in an effort to hinder, delay, and defraud creditors of the Estate. **2-ER-95–96**, ¶ 12. By the Effective Date, the entirety of the Net Proceeds had been misappropriated by the Debtor, and Coastal was left an empty shell. **2-ER-139**, ¶ 212. In September 2020, the Debtor passed away. **2-ER-98**, ¶ 22.

After the Effective Date, the Trustee commenced an adversary proceeding against the Debtor's trust and the recipients of the Net Proceeds to recover the misappropriated funds, pleading in the alternative that the defendants were in receipt of postpetition transfers (or fraudulent transfers) or that the defendants converted the funds, among other theories (the "Adversary Proceeding"). **4-ER-492–644**. The premise of the Trustee's complaint is that the Net Proceeds belong

to the Debtor's Estate; thus, the defendants are in receipt of property of the estate that they must return for the benefit of the Estate and its creditors.  **2-ER-91–307**.

As pled in the operative Second Amended Complaint (the "Complaint"), under California law, the Liquidation Event constituted the "contingent event" that caused the Estate's mere expectancy interest in shareholder distributions to evolve into a vested right.  **2-ER-94**, ¶ 6; **2-ER-110**, ¶ 84.  This is a key argument that bears repeating—under California law, the Liquidation Event served as the "contingent event" that caused the Estate's mere expectancy interest in shareholder distributions to evolve into a vested right.  The Debtor's dissipation of the Net Proceeds postpetition without bankruptcy court approval (or disclosure) was thus improper and constituted unauthorized postpetition transfers of the Estate's property in violation of 11 U.S.C. § 549.  **2-ER-130–131**, ¶¶ 178–184. Alternatively, the Debtor's actions constituted fraudulent transfers to the various defendants, as well as conversion.  **3-ER-341–342**, ¶¶ 162–169; **2-ER-141**.  At minimum, defendants are subsequent transferees and the transfers are subject to recovery under 11 U.S.C. § 550(b).

## C.    The Bankruptcy Court's Judgment and BAP Appeal

On July 22, 2021, the Trustee filed the original complaint (the "Original Complaint") against appellees Aurora Capital Advisors, Richard Babcock, Anthony Nobles (collectively the "Aurora Defendants"), Oldfield Creely, LLP ("Oldfield Creely"), and JRG Attorneys at Law ("JRG Attorneys," and collectively with the Aurora Defendants and Oldfield Creely, the "Appellees"), among others. **4-ER-492–644**.  The Appellees each filed a motion to dismiss the Original Complaint pursuant to Civil Rule 12(b)(6) (collectively, the "First Motions to Dismiss") arguing, among other things, that the Net Proceeds were not property of the Estate.  The bankruptcy court granted the First Motions to Dismiss with leave to amend.  **3-ER-465–470**; **3-ER-471–490**.

In granting the First Motions to Dismiss, the bankruptcy court concluded that "Coastal could not have liquidated all its assets and paid all its debts prior to the sale of the Delaware [P]roperty." **3-ER-478**. In so finding, the bankruptcy court failed to note that the Delaware Property had itself been purchased long after Coastal had liquidated, and was merely evidence of the postpetition fraudulent transfers—*i.e.*, the use of the Net Proceeds for Debtor's personal indulgence without bankruptcy court approval. **2-ER-114**, ¶ 100. The bankruptcy court additionally concluded that "the standard rule is that assets of a corporation owned by a debtor are not an asset of the debtor unless the corporate form is pierced or otherwise invaded. Here, the complaint does not allege alter ego or veil piercing claims." **3-ER-478**.

On December 23, 2021, the Trustee filed his First Amended Complaint (the "FAC") against the Appellees and others asserting essentially the same claims as in the Original Complaint and adding alter ego allegations. **3-ER-309–464**. The Aurora Defendants and Oldfield Creely each filed a motion to dismiss the FAC (together, the "Second Motions to Dismiss"). On March 24, 2022, the bankruptcy court entered a Memorandum Decision (the "FAC Memorandum Decision") granting the Second Motions to Dismiss with leave to amend. **1-ER-64–80**.

In the FAC Memorandum Decision, the bankruptcy court found that the Trustee did not adequately allege that the Net Proceeds are property of the Estate, and that alter ego does not provide a cognizable legal theory for the Net Proceeds to become assets of the Estate. *Id.* Specifically as to alter ego, the bankruptcy court concluded that "[u]nder California law, the alter ego theory alone does not bring Coastal's assets into the bankruptcy estate, and unlike the cases relied on by the Trustee, there has been no substantive consolidation of Debtor's estate with Coastal." **1-ER-70–71**.

On April 12, 2022, the Trustee filed a Second Amended Complaint (the "SAC") against the Appellees identifying the Liquidation Event, the failure of the Debtor to get bankruptcy court approval for necessary shareholder actions, and removing claims rejected by the bankruptcy court. **2-ER-91–307**. The Appellees each filed a motion to dismiss the SAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (collectively, the "Third Motions to Dismiss"). After oral argument, on August 1, 2022**,** the bankruptcy court entered a Memorandum Decision (the "Bk. Decision") granting the Third Motions to Dismiss without leave to amend. **1-ER-46–57**.

In the Bk. Decision, the bankruptcy court found that the Trustee still did not adequately allege that the Net Proceeds were property of the Estate. The bankruptcy court stated in relevant part:

> Focusing on the word "shall," Trustee asserts the estate's interest transformed from an expectancy interest to a property right because the Amended Articles required a distribution to shareholders. This argument is not compelling.
>
> In order to liquidate, Debtor was required to first pay all creditors, then distribute remaining funds to shareholders. *See Penasquitos, Inc. v. Super. Ct.*, 53 Cal. 3d 1180, 1191 (1991) (citing Cal. Corp. § 2004 and stating that "a corporation cannot distribute its assets, nor may it dissolve, until its officers have paid or made provision for all known debts and obligations")[.] Thus, the liquidation was not automatic as Trustee asserts. At the very least, Coastal had obligations to pay corporate debts. It is undisputed that after the sale of the Wine Estate, Coastal owed taxes to the IRS. In addition, Coastal purchased property and provided funds to third parties. In short, Debtor's estate only held an expectancy interest in the future value of Coastal, which was subject to Debtor's diminishment until Coastal was actually liquidated.

**1-ER-51–52.**

Concurrently with the issuance of the Bk. Decision the bankruptcy court entered three orders granting the Third Motions to Dismiss and dismissing with

prejudice the first, second, third, fourth, fifth, seventh, eighth, and ninth claims for relief in the Complaint, finding that each of those claims relies on the Net Proceeds being property of the Estate (collectively, the "Orders"). **1-ER-40–45**. Because the Orders adjudicated fewer than all the claims in the Complaint and the rights and liabilities of fewer than all defendants in the Adversary Proceeding, the Trustee brought a motion for certification of partial final judgment under Civil Rule 54(b) (the "Rule 54(b) Motion"). On October 6, 2022, the bankruptcy court entered an order granting the Rule 54(b) Motion and entered the Judgment. **1-ER-28–39**.

On October 13, 2022, the Trustee timely filed a notice of appeal of the Judgment. **2-ER-82–90**. On April 12, 2023, the BAP issued its Memorandum [**1-ER-3–27**] and entered a judgment affirming the Judgment [**1-ER-2**]. On May 2, 2023, the Trustee timely filed a notice of appeal of the BAP judgment. **5-ER-899–931**.

Both the bankruptcy court and the BAP determined that, notwithstanding the indisputable occurrence of a Liquidation Event, until the Net Proceeds were in fact *paid* to the Debtor, the Net Proceeds would not become property of the Estate. **1-ER-16**; **1-ER-51–52**. At the same time, both concurred that the Estate would have a *claim* against Coastal (not third-party recipients of the money) to "demand distribution, but they would still not be the owner of any of the company's assets." **1-ER-52**; **1-ER-17** ("This gave him a claim against Coastal for distribution of the assets, not immediate ownership."). This was legal error.

# IV.

## SUMMARY OF ARGUMENT

This appeal was brought to correct errors of law by the bankruptcy court and BAP, which errors resulted in the Judgment dismissing the Complaint as against the Appellees with prejudice, as follows:

*First*, the lower courts incorrectly interpreted California law and the Articles in failing to find that the occurrence of the Liquidation Event served, as a matter of law, to convert the Estate's expectancy interest in the assets of Coastal into a vested property right. Under the Articles, the Debtor had an irrevocable right to receive the Net Proceeds from Coastal upon the occurrence of a Liquidation Event. That right belonged exclusively to the Estate on the Petition Date and became a vested, direct right upon the sale of the Wine Estate Property. *See Fowler v. Shadel*, 400 F.3d 1016, 1018 (7th Cir. 2005) ("To say that shareholders in a corporation have an equitable interest in the property of the corporation is simply to say that, if the corporation is liquidated . . . the shareholders will become the legal owners of the corporate property (and a sole shareholder will become the sole owner of that property.")). Indeed, had the monies remained with Coastal, there is no doubt that the Estate would be entitled to those funds as proceeds of the Debtor's 100% interest in Coastal's stock. The Estate's right to the Net Proceeds is property of the Estate under Section 541(a)(6), and it is an interest in property that was acquired after commencement of the Bankruptcy Case pursuant to Section 541(a)(7).

*Second*, the lower courts incorrectly applied California law on when a shareholder obtains a property right in a dividend. Both lower courts required actual receipt of the dividend payment, but that is not required. A property right vests in the shareholder upon declaration of such dividend, not upon its receipt. *Stephenson v. Drever*, 16 Cal. 4th 1167, 1177 (1997) (declaration of dividend

creates vested right in shareholder to proceeds, which cannot be defeated absent the shareholder's consent). Further, the Debtor's actions with respect to Coastal were akin to a dividend (albeit a disguised one), vesting the Estate with a property right in those monies. *See Nasser v. United States*, 257 F. Supp. 443, 447 (N.D. Cal. 1966) ("It is settled that a corporate distribution to a shareholder in order to constitute a dividend, need not be formally declared a dividend by the Board of Directors.").

*Third*, the lower courts misapplied California law in the context of when the assets of a debtor's alter ego are considered part of the debtor's bankruptcy estate. The lower courts incorrectly assumed that the Trustee attempted to "reverse pierce" the corporate veil, which is not generally permitted under California law. However, the Complaint instead uses alter ego as a mechanism to expand what property should be included in a debtor's estate. It is well established that a debtor has an equitable interest in the assets of his alter ego. *See, e.g.*, *Unite Here Health v. Gilbert*, 2014 WL 2527121, *5 (D. Nev. June 4, 2014) (stating that a debtor has an equitable interest in its alter ego's assets). Indeed, "[i]n the context of a bankruptcy case, the application of the alter ego doctrine brings the assets of a debtor's alter ego into the bankruptcy estate." *In re Bellardita*, 2008 WL 4296554, at *11 (Bankr. E.D. Cal. Sept. 19, 2008) (citing *Suhl v. Bumb,* 348 F.2d 869, 873 (9th Cir. 1965), *cert. denied,* 382 U.S. 938 (U.S. Dec. 6, 1965)). *See also In re Singh*, 2019 WL 1231146, at *6-*7 (B.A.P. 9th Cir. Mar. 14, 2019) (stating that property of the debtor includes not only property nominally held by the debtor, but also property held by the debtor's alter ego); *Stout v. Marshack*, 649 F. App'x 621, 623 (9th Cir. 2016) ("[P]roperty owned by a corporation may be considered a debtor's property where the corporation was the debtor's alter ego.").

*Fourth*, the lower courts erred in rejecting the Trustee's alternative argument that a plain reading of 11 U.S.C. § 541(a)(1) supports the simple conclusion that

the Debtor's 100% interest in the shares of Coastal and the rights attendant to those shares became an asset of the Estate on the Petition Date. The Trustee cited voluminous supporting authority on the issue, including *In re Pisculli*, 2009 WL 700059 at \*3 (Bankr. E.D.N.Y. Mar. 4, 2009) ("Once the Debtor liquidated the Assets of A.N., the Debtor had a direct interest in the Proceeds."), *aff'd,* 426 B.R. 52 (E.D.N.Y. 2010), *aff'd,* 408 F. App'x 477 (2d Cir. 2011). As *Pisculli* instructs, "[h]aving liquidated the Assets, equity for the shareholders was created and the Debtor as the corporation's owner and direct beneficiary had full control over the Proceeds." *Id.* The BAP and bankruptcy court rejected *Pisculli* ostensibly because it was rooted in New York law, but the analysis stopped there. New York law is entirely consistent with California law on the issue. *Pisculli* is entirely consistent with the California authority cited herein and Coastal's Articles, as is the Trustee's other authorities.

*Fifth*, aside from the Trustee's claims for avoidance and recovery of transfers, the lower courts incorrectly analyzed California law on whether the facts as pled support a claim for conversion. Defendants in the Adversary Proceeding have wrongfully taken possession of the Net Proceeds, which right to possession solely belonged to the Estate. The Trustee thus properly pled a claim for conversion against defendants. *See Scottsdale Ins. Co. v. Nationwide Med., Inc.*, 2017 WL 8948063, at \*3 (C.D. Cal. Dec. 13, 2017) (stating that jury found defendants who received plaintiff/shareholder's portion of an option payment liable for conversion because the defendants had "'intentionally and substantially interfere[d]' with [plaintiff's] right to possession" of a portion of the option payment, which was commensurate with his ownership interest in" the corporation). Accordingly, the Judgment should be vacated.

# V.

# ARGUMENT

## A.    Civil Rule 12(b)(6) Standard

As noted above, the order on appeal is an order dismissing the Trustee's Complaint with prejudice. A Civil Rule 12(b)(6) motion should only be granted "if the complaint fails to allege enough facts to state a claim to relief that is plausible on its face." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (internal quotation marks omitted) (citing, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). For purposes of evaluating a motion to dismiss, the Court must accept as true all well pleaded factual allegations made in the operative pleading and construe them in the light most favorable to the non-movant. *In re Fitness Holdings*, 714 F.3d 1141, 1144–45 (9th Cir. 2013). An appellate court must also accept the well-pleaded allegations as true on review. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002).

## B.    The Trustee Adequately Pled that the Debtor's Estate was the Equitable Owner of the Net Proceeds as a Result of a Liquidation Event

### 1.    The Scope of Property Rights Included in an Estate is Broad

The practical implication of the Judgment (and BAP's affirmance thereof) is that, in order for the Net Proceeds to be property of the Debtor's estate, the Debtor himself needed to transfer money out of Coastal's bank account and place it into his personal bank account; in other words, essentially move money from his left hand to his right hand. This cannot be the law. For one, the result ignores the fact that, because of the Liquidation Event, the Estate undoubtedly held at minimum an equitable ownership interest in those funds. Indeed, equitable interests are expressly estate property under 11 U.S.C. § 541(a)(1), and the well pleaded

15

allegations of the Complaint established this. Where the Debtor holds an equitable interest in property, the Debtor's Estate may recover that property from those who improperly received it as an unauthorized postpetition transfer under 11 U.S.C. § 549.

Section 541 of the Bankruptcy Code establishes property of the bankruptcy estate. The Trustee asserts that the Net Proceeds are property of the Estate under 11 U.S.C. § 541(a)(6) and/or (a)(7). The estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "[T]he term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." *Segal v. Rochelle,* 382 U.S. 375, 379 (1966). "[T]he courts have consistently said that options or contingent interests are property of the bankruptcy estate under section 541." *In re Bialac,* 712 F.2d 426, 431 (9th Cir. 1983) (case dealt with a contingent redemption right). Furthermore, "nothing in section 541 requires that the debtor's interest be immediately capable of being liquidated into cash to constitute property of the estate. Instead, Section 541(c)(1) provides that a debtor's interests become property of the estate even in circumstances in which the interest cannot be liquidated and transferred by the debtor." *Nichols v. Birdsell*, 491 F.3d 987, 990 (9th Cir. 2007) (internal citation removed).

In addition, Section 541(a)(6) provides that property of the estate includes the "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6). Section 541(a)(6) is a "generous provision that sweeps into the bankruptcy estate all interests held by the debtor -- even future, non-possessory, contingent, speculative, and derivative interests." *In re Giant Gray, Inc.*, 629 B.R. 814, 843 (Bankr. S.D.

Tex. 2020). "Congress intended for the definition of proceeds to be more expansive than that found in the Uniform Commercial Code and 'encompass[ ] any conversion in the form of property of the estate, and anything of value generated by property of the estate.'" *Id.* Thus, the statute makes clear that if a debtor has a contingent right to receive funds in the future on the petition date, that contingent right belongs to the bankruptcy estate. *In re Whittick*, 547 B.R. 628, 635 (Bankr. D.N.J. 2016).

Moreover, Section 541(a)(7) provides that property of the estate also includes "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7).

> 2.    Shareholder Property Rights Under California Law

While the question of "what is property of the bankruptcy estate" is a question of federal law, "bankruptcy courts must look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case." *McCarthy, Johnson & Miller v. N. Bay Plumbing, Inc. (In re Pettit),* 217 F.3d 1072, 1078 (9th Cir. 2000) (citing *Butner v. United States,* 440 U.S. 48, 54–55 (1979)).

In the context of corporate assets, California law distinguishes between a shareholder's mere "expectancy" interest in a distribution and ownership—or a direct right—to such distribution.  As explained by the California Supreme Court:

> [a] corporation has a personality distinct from that of its shareholders, and that the latter neither own the corporate property nor the corporate earnings. The shareholder simply has an expectancy in each, and ***he becomes the owner of a portion of each only when the corporation is liquidated by action of the directors*** or when a portion of the corporation's earnings is segregated and set aside for dividend payments on action of the directors in declaring a dividend.

*Miller*, 17 Cal. 2d at 436 (emphasis added).

The critical inquiry under California law, therefore, focuses on whether the Estate's right to a distribution is a mere expectancy interest, which "is not a property right under California law, and under the Bankruptcy Code's expanded definition of 'property of the estate'" [*In re Downs*, 2020 WL 7483142, at \*8 (Bankr. C.D. Cal. Nov. 17, 2020)], or whether, as pled in the Complaint and set forth in the Articles, the Liquidation Event served to convert this expectancy interest into a vested property right.

California courts have illustrated the difference between an expectancy interest and a property right as follows:

> 'The term expectancy describes the interest of a person who merely foresees that he might receive a future beneficence.... [***T]he defining characteristic of an expectancy is that its holder has no enforceable right to his beneficence***.' (*In re Marriage of Brown* (1976) 15 Cal.3d 838, 844–845, 126 Cal.Rptr. 633, 544 P.2d 561.) By contrast, a contract right which has been earned or purchased for a consideration is property, even though its enjoyment may be contingent upon future events. (*Id.*, at pp. 846–847 and fn. 8, 126 Cal.Rptr. 633, 544 P.2d 561; *accord, In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 746, 131 Cal.Rptr. 873, 552 P.2d 1169.) Such a right 'cannot be defeated or diminished without [the holder's] agreement and it is therefore a valuable property right.' (*In re Marriage of Fonstein, supra*, at p. 746, 131 Cal.Rptr. 873, 552 P.2d 1169.)

*Estate of Mitchell*, 76 Cal. App. 4th at 1392 (emphasis added). The *Mitchell* court gave examples of expectancy interests—*i.e.*, interests that could be revoked before they vested:

> Probably the classic example of a 'naked expectancy' is the prospective interest of a beneficiary under a will. (*Hoeft v. Supreme Lodge K. of H. 1896*) 113 Cal. 91, 96, 45 P. 185; see also Civ.Code, § 700.) Similarly, '[t]he interest of the beneficiary of a life insurance policy designated by an insured who has the right to change the beneficiary is not a vested right but a mere expectancy....' (*Sieroty v. Silver* (1962) 58 Cal.2d 799, 802, 26 Cal.Rptr. 635, 376 P.2d 563, disapproved on other grounds in *Estate of Baglione* (1966) 65 Cal.2d 192, 197, 53 Cal.Rptr. 139, 417 P.2d 683; accord, In re Marriage of Brown, supra, 15 Cal.3d at p. 845, fn. 6, 126 Cal.Rptr.

18

633, 544 P.2d 561; *In re Marriage of O'Connell* (1992) 8
Cal.App.4th 565, 577, 579, 10 Cal.Rptr.2d 334.)

*Id.* at 1392–93. In both scenarios (a beneficiary under either a will or a life insurance policy), the beneficiary's rights may be taken away prior to the vesting event. Accordingly, those expectancy rights only vest where they are irrevocable or because the contingent event (the death of the testator or the insured under the life insurance policy) has occurred before such rights have been revoked.

When the contingent event occurs before revocation, however, as here, the beneficiary's right is deemed vested. That vested property right is an asset of a bankruptcy debtor's estate. *See In re Bialac,* 712 F.2d at 431.

Under Coastal's Articles, upon a Liquidation Event a shareholder's mere expectancy interest in the assets of Coastal convert to a vested and direct property interest in the Net Proceeds from the Liquidation Event. In other words, the Estate's rights matured and vested as a result of the Liquidation Event—*i.e.* the sale of Coastal's sole asset. *See Kline Hawkes California SBIC, L.P.*, 117 Cal. App. 4th 183, 193 (2004) (liquidation preference is a "measure of the shareholders entitlement to the equity, i.e., the net assets of the corporation" upon an event that triggers such right, which in *Kline* was a dissolution).

Once the Liquidation Event occurred, the Articles mandated a distribution of the Net Proceeds to the Estate. The Articles did not make such distribution discretionary or provide any discretion to revoke such rights after the Liquidation Event occurred. Rather, the distribution requirement was nondiscretionary and irrevocable.

Under California law, corporations only have the "powers specifically granted, and all powers necessary for the purpose of carrying into effect those expressly given, but no others." *Dougherty v. Foley*, 32 Cal. 402, 403 (1867) (citing 2 Kent, 288-9, *City of Oakland v. Carpentier*, 13 Cal. 545 (1859) (a corporation has no powers except those expressly provided for in the charter), and

*Wallace v. Mayor of San José,* 29 Cal. 180 (1865)). The Articles make clear that upon a Liquidation Event, the cash proceeds of that event belong to the shareholders—in this case, the Estate—to be paid first to the preferred shareholders with any remaining corpus to be paid to the holders of common stock. **2-ER-145**. The Articles provided no discretion to Coastal's board of directors (which consisted of the Debtor and his wife) to use the proceeds of the Liquidation Event for any other purpose. *Id.* Rather, the only incidental right the board had with respect to the obligation to distribute the proceeds of the Liquidation Event to the Estate was identifying and setting aside proceeds from that sale to satisfy the claims of then existing legitimate creditors.

The bankruptcy court and BAP both incorrectly held that the Coastal had to pay all of its then-existing creditors and, further, distribute the remaining corpus to the Estate before the Estate would have a property right in those funds. **1-ER-16**; **1-ER-51–52**. That holding is incorrect under California law.

In the analogous (and as discussed below applicable) case of a dividend, prior to a dividend declaration a shareholder has no rights to a dividend; after such a declaration, however, the shareholder has "valuable property rights." *Miller*, 17 Cal. 2d at 436; *Stephenson*, 16 Cal. 4th at 1177 (declaration of dividend creates vested right in shareholder to proceeds, which cannot be defeated absent the shareholder's consent) (citing *Smith v. Taecker*, 133 Cal. App. 351, 352 (1933) and *Meyers v. El Tejon Oil & Refining Co.*, 29 Cal. 2d 184, 188 (1946)).

As the *Stephenson* court instructs:

> A shareholder also has valuable property rights.
> Foremost among these is the right to receive dividends.
> (See § 166.) ***When a dividend is lawfully declared by the board of directors it vests in the owner of record of the shares and creates a debt in his favor against the corporation.*** (*Smith v. Taecker* (1933) 133 Cal.App. 351, 352 [24 P.2d 182].) ***The shareholder's vested right to such dividend "cannot be defeated by later revocation of the dividend without his consent.*** (*Meyers v. El*

20

> *Tejon Oil & Refining Co.* (1946) 29 Cal.2d 184, 188 [
> 174 P.2d 1].) In addition, unless otherwise provided in
> the articles of incorporation or in the stock certificate, a
> shareholder has the right to transfer or hypothecate his
> shares. (See § 204, subd. (b).)

*Stephenson*, 16 Cal. 4th at 1177.  Thus, in the case of a vested right to a dividend, the crucial event that transforms a shareholder's expectancy right into a vested property right is the declaration of the dividend, not the actual distribution thereof. Once declared, the board cannot divest the shareholder of this right absent the shareholder's consent. *Id.*

Taken one step further, and contrary to the crux of the lower court's ruling vis-à-vis a defined Liquidation Event, a declared dividend (a Liquidation Event's equivalent under the Articles) becomes property of the bankruptcy estate when declared, not when it is paid.  *See In re: Plaza De Retiro, Inc.*, 2018 WL 5304724, *3 (Bankr. D. NM Oct. 24, 2018).  The holding in *Plaza De Retiro* that the right to the dividend becomes an estate asset when the dividend is declared is consistent with *Miller* and uniform California law (*Stephenson*, *Meyers*, and *Smith*) insofar as the declaration of the dividend is the contingent event that converts an expectancy right into a vested ownership interest and such vested ownership interest necessarily falls within the broad definition of an asset of the estate.  *See* 11 U.S.C. § 541.  The bankruptcy court and BAP thus were incorrect to hold that receipt of the funds or even distribution to creditors were contingencies that must occur before the Estate's right to the Net Proceeds vested. **1-ER-16**; **1-ER-51–52**.

3. No Remaining Contingency Existed as of the Sale of the Wine Estate Property; the Estate Held a Direct Right to a Distribution

The BAP asserted without analysis a distinction between a "Liquidation Event" and the "liquidation" of a corporation, stating that the Trustee improperly conflated the two.  Yet, the Articles treat a liquidation and the sale of all of Coastal's assets as functional equivalents and the BAP did not identify in the Articles another "contingent event" that needed to occur after the sale of Coastal's

21

lone asset to create a property interest in the shareholder (the Estate). *See* **1-ER-16–18**. Indeed, the language of the Articles is absolute. Upon the occurrence of a Liquidation Event—in this case the sale of all Coastal's assets—the shareholder has an absolute entitlement to the payment of the Net Proceeds through the mechanism of the liquidation preference language. **2-ER-145** ("shall be entitled to receive"). *See, e.g., Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381 (Del. 2012) (defined "Liquidation Event" would provide preferred shareholder with a preference distribution with any remainder to common shareholders, but no Liquidation Event occurred); *see also Kline Hawkes*, 117 Cal. App. 4th at 193 (recognizing that liquidation preference provision is a "measure of the shareholders entitlement to the equity, *i.e.*, the net assets of the corporation" when a triggering event occurs). Here, the triggering event was the Liquidation Event.

The BAP incorrectly states the Trustee's position as follows:

> As the bankruptcy court held and the Trustee does not deny, Coastal owed outstanding debts, including federal taxes and obligations to Mr. Brower. Indeed, Coastal used some of the Net Proceeds to pay other debts.

**1-ER-18**. ***This is not an accurate recitation of the Trustee's position.*** To the contrary, the Complaint alleges in relevant part:

- Coastal owed no outstanding debts, as it either paid or provided for all existing debts;

- Net Proceeds were not used to pay any debts; "Net Proceeds" is defined in the Complaint as the money remaining after payment or provision for all outstanding debts.

**2-ER-93**, ¶ 4.[3]

---

[3] As pled, the Trustee asserted that the Net Proceeds were not used to "pay other debts"; rather, they were used to take on new debts or pay illegitimate claims for the Debtor's benefit, and not for the benefit of Coastal.

Similar to the BAP, the bankruptcy court mistakenly concluded that Coastal could not have liquidated, given that Coastal paid taxes owed to the Internal Revenue Service (the "IRS") as a result of the sale the following year, ignoring the fact that Coastal had made provision for that payment prior to the calculation of Net Proceeds being made. Compare **1-ER-18** with **2-ER-93**, ¶ 4. Again, the Complaint alleges that the amount of "Net Proceeds" dissipated by the Debtor were **_net_** of all creditor claims, including the IRS claim that was paid later.

The existence of creditors that needed to be paid before distribution to the Estate misses the point and misstates the Trustee's allegations. Payment to then-existing legitimate creditors was not the contingency identified in the Articles that served to establish the Estate's vested property right in the Net Proceeds. Those rights vested upon the occurrence of the Liquidation Event. While those rights were junior to the rights of legitimate corporate creditors, the rights were vested.

Citing *Penasquitos, Inc. v. Super. Ct.*, 53 Cal. 3d 1180, 1191 (1991), the bankruptcy court conflated a timing/priority issue—when Coastal would be in a position to distribute its Net Proceeds to the Estate—with a vesting issue, *i.e.*, whether the Estate had a legal right to the monies. *Id.* ("a corporation cannot distribute its assets, nor may it dissolve, until its officers have paid or made provision for all known debts and obligations"). Clearly, the timing of receipt by the Estate of the Net Proceeds was contingent on the Debtor first making provision for legitimate creditors existing at the time of the Liquidation Event. But, *Penasquitos* does not pretend to address the vesting issue.

As clarified in the Trustee's Complaint, making provision for then-existing legitimate creditors still yielded approximately $7 million in Net Proceeds to which the Estate had a vested interest and which assets were improperly transferred by the Debtor without authority under the Articles to do so. Contrary to the BAP's framing, the Debtor proceeded to incur new debts or pay knowingly illegitimate,

23

none of which were for the benefit of Coastal assuming Coastal's board had any discretion but to distribute the assets in conformity with the Articles.

It cannot be the case that during this period—*i.e.*, the period after a Liquidation Event occurs and/or a dividend is declared but before payment is made to a shareholder thereon—that a corporation's board of directors or officers can use these monies to incur new debts, including new debts for the benefit of the Debtor, not Coastal. Coastal's Articles provided no such discretion. A right to ownership and, thus, possession vested in the Estate as the shareholder because the Liquidation Event occurred. It follows that the Estate holds an equitable ownership interest in the funds themselves, the Net Proceeds, not a mere claim to sue the corporation for wrongful use of the funds. *See Mitchell Brown Gen. Eng'g, Inc. v. Kraft*, 2007 WL 1629991, at *12 (Cal. Ct. App. June 7, 2007) (stating that "equitable ownership can exist when another party holds legal title to an asset for the benefit of the equitable owner.") (citing Black's Law Dictionary (7th ed. 1999, p. 1130)). This equitable interest is a property right that belongs to the Estate and the Estate alone.

The bankruptcy court's conclusion is simply wrong under the California Corporations Code, Coastal's controlling Articles, bankruptcy law, and the weight of authority including both California and out-of-state authority. The sale of the Wine Estate Property vested direct rights in the Estate in the Net Proceeds—rights that the Estate did not have before the Liquidation Event. The Liquidation Event created the Estate's legal right to the Net Proceeds as the sole shareholder, not the actual receipt thereof. As such, the Net Proceeds were an asset of the Estate.

The allegations in the Complaint, at a minimum, create a question of fact that cannot be decided on a motion to dismiss. Under the Articles, the Debtor had a contingent right to receive assets from Coastal upon a Liquidation Event that belonged to the Estate on the Petition Date. This contingent right became a vested

right upon occurrence of the Liquidation Event. As set forth above, the property right vested in the shareholder (i.e. the Estate) upon declaration of such dividend, not upon its receipt. Indeed, the crux of the allegations are that the transfers of the Net Proceeds were not legitimate in the first instance such that the monies should never have been transferred from Coastal. Had the monies remained with Coastal (rather than being transferred for no consideration, as alleged in the Complaint), there is no doubt that the Estate would be entitled to those funds as proceeds of the Debtor's 100% interest in Coastal's stock. The Estate's right to the Net Proceeds is property of the Estate under Sections 541(a)(1) and (a)(6), and it is an interest in property that was acquired after commencement of the Bankruptcy Case pursuant to Section 541(a)(7).

## C. Receipt of Net Proceeds is Not Required Under California Law to Vest a Property Right in Dividends

As noted above, California law and the Articles provide that a shareholder becomes an owner of a portion of corporate property and corporate earnings only when (1) the corporation is liquidated, (2) a Liquidation Event occurs, or (3) when a portion of the corporation's earnings is set aside for dividends. *Miller*, 17 Cal. 2d at 436; **2-ER-145**. Section A, *supra*, addresses the first independent option. Here, and as an alternative and independent option, the Trustee addresses the second *Miller* possibility and submits that the Debtor's actions with respect to Coastal were akin to a dividend (albeit a disguised one), vesting the Estate with a property right in those monies.

For tax purposes, a distribution may be considered a dividend even though the board of directors did not formally declare a dividend and no funds were formally distributed or paid to the shareholder. As explained in *Alisa v. Comm'r*, 35 T.C.M. (CCH) 1113 (T.C. 1976):

> A corporate distribution may be considered as a dividend to its shareholders even though no funds were formally

> distributed by the corporation or paid to the shareholders. In order to be treated as a dividend for tax purposes, however, ordinarily the distribution must be made for the personal benefit of a shareholder or in discharge of his personal obligation. *Walter K. Dean*, 57 T.C. 32, 40 (1971); *W. B. Rushing*, 52 T.C. 888, 893 (1969), affd. (without discussion of this issue) 441 F.2d 593 (5th Cir. 1971); *Rapid Electric Co.*, 61 T.C. 232, 239 (1973); *Challenge Manufacturing Co.*, 37 T.C. 650, 663 (1962).

*Id. See also Nasser v. United States*, 257 F. Supp. 443, 447 (N.D. Cal. 1966) ("It is settled that a corporate distribution to a shareholder in order to constitute a dividend, need not be formally declared a dividend by the Board of Directors.").

California courts recognize this concept. For example, in *Rice v. Downs*, 73 Cal. App. 5th 213 (2021), a creditor, Gary Downs, obtained a charging order against William Rice's interest in Triton Community Development LLC ("Triton") to satisfy a judgment in Downs' favor. *Id.* at 217. After the charging order was entered, Triton made a $450,000 payment to the appellant for legal fees for services performed on Rice's behalf. *Id.* at 220. Downs moved in the trial court for enforcement of the charging order contending that Triton's payment to the appellant violated the charging order. *Id.* The trial court found that the payment to the appellant was a distribution to Rice subject to the charging order. *Id.* at 220–25. The trial court additionally found that Triton was the alter ego of Rice. *Id.* at 224. The trial court ordered the appellant to pay Downs $450,000. *Id.* at 225. The appellant appealed. *Id.*

The California Court of Appeal for the Second District agreed with the trial court and found that "when Rice, as sole managing member of Triton, directed the company to disburse funds to pay his legal bills, it constituted a distribution to him subject to the charging order." *Id.* at 218.[4] In coming to its conclusion, the California Court of Appeal for the Second District reasoned as follows:

---

[4] The California Court of Appeal for the Second District ultimately reversed the disgorgement order and remanded the action to the trial court to determine whether the appellant's lien, which had priority over the charging order, entitled the appellant to the same property covered by the charging order. *Id.* at 218.

By emphasizing the statutory language referring to the LLC's operating agreement, Glaser Weil appears to be limiting the reach of a charging order to distributions formalized under that agreement, such as dividends or other entitlements granted to members. This narrow reading disregards the reality that many LLCs, like Triton, are completely controlled by a single person who may distribute funds at his or her discretion. (*See Curci Investments, LLC v. Baldwin* (2017) 14 Cal.App.5th 214, 224, 221 Cal.Rptr.3d 847 [managing member with "near complete interest" in LLC "effectively has complete control over what [the LLC] does and does not do, including whether it makes any disbursements to its members"].) Under [the appellant's] interpretation, such entities easily could evade charging orders by eschewing formal distributions and instead taking funds out of the LLC as the need arose.
. . .

When a managing member of an LLC directs the LLC to disburse funds for the managing member's own purposes, the managing member does so based on the "right ... associated with [his or her] capacity as a member," invoking powers "in accordance with the operating agreement." (See *ibid.*) Put another way, the managing member has access to that money only by virtue of his or her status as managing member, just as members have the right to formal distributions by virtue of their status as members. We see no basis to treat the two types of disbursements differently, particularly when doing so would encourage evasion of charging orders.

. . .

Thus, although Triton may have been paying for the obligation it had assumed, the result was that Rice personally was relieved of a portion of his debt. The payment effectively was money in Rice's pocket, because anything Triton paid for the legal expenses owed by Rice was something Rice would not have to pay to [the appellant]. The payment therefore constituted a "distribution" as much as had Rice received the money himself.

*Id.* at 226–28.

With regard to the alter ego finding, the California Court of Appeal for the Second Circuit found that the trial court was free to "look past the corporate formalities and deem the transaction as Rice distributing money to himself from Triton to pay his legal bills. The fact that as a technical matter it was Triton that

made the payment pursuant to its own purported obligations was immaterial because Triton and Rice were effectively one and the same." *Id.* at 228. !!!

Although *Rice* analyzed the distribution under the California statutes relating to distributions to members of LLCs, the same reasoning applies in this case. As pled in the Complaint, the transfers of the Net Proceeds were made for the Debtor's benefit. **2-ER-95–96**. The Debtor controlled Coastal and distributed the Net Proceeds at his discretion. *Id.* Additionally, the transfers of the Net Proceeds were effectively money in the Debtor's pocket because the transfers from Coastal benefitted the Debtor and, in some cases, paid for expenses that the Debtor was otherwise obligated to pay. For example, the transfers to JRG Attorneys were for legal expenses incurred by the Debtor, his family, and friends years after the sale of the Wine Estate Property. **2-ER-127–128**, ¶¶ 163–168. If Coastal had not made these payments, the Debtor would have been liable to JRG Attorneys. The same is true for the payments to Oldfield Creely. The legal services were not provided to Coastal, but rather to another of Debtor's wholly-owned corporations. **2-ER-129**, ¶ 170.

Additionally, Coastal paid for Debtor's living expenses, for his residence, and transferred monies to several of the Debtor's wholly-owned corporations, to the Debtor's son, and the Debtor's trust. **2-ER-115–119**, ¶¶ 107–129. These transfers were not made in the ordinary course of Coastal's business, but rather for the Debtor's benefit. As in *Rice*, the distributions made by Coastal may be considered dividends to the Debtor even though the Debtor did not formally declare a dividend or distribute the funds to himself. *See also* Cal. Corp. Code § 166 (providing in relevant part: "'Distribution to its shareholders' means the transfer of cash or property by a corporation to its shareholders without consideration, whether by way of dividend or otherwise.").

28

Thus, the lower courts alternatively could have found that the dissipation of the Net Proceeds were in fact improperly distributed to the Debtor (*i.e.*, distributed for the Debtor's benefit), not the Estate, insofar as (i) Coastal had no ongoing business, and (ii) the monies were used for the Debtor's (and his family and friends') enrichment (such as buying the Debtor and his wife a residence) for which Coastal received no consideration. The very use of the Net Proceeds—to enrich the Debtor, his family and friends—equated to a dividend to the Debtor if, as the lower courts held, Coastal was not in fact liquidated. The Net Proceeds were used for the Debtor's own personal benefit; in other words, the Debtor used the funds as if he had declared a dividend. In other words, the Estate's actual possession of the Net Proceeds is a red herring; the Debtor was in control of and directing the use of the monies for his own personal benefit. *See Rice*, 73 Cal. App. 5th at 227–28.

Indeed, the lower courts insistence that the Net Proceeds are not property of the Estate because the Debtor (as director) did not formally declare a dividend to himself each time he made a distribution improperly elevates form over substance. "Bankruptcy courts are courts of equity. As such, they possess the power to delve behind the form of transactions and relationships to determine the substance." *In re United Energy Corp.*, 944 F.2d 589, 596 (9th Cir. 1991) (citing *Global W. Dev. Corp. v. Northern Orange County Credit Serv., Inc. (In re Global W. Dev. Corp.),* 759 F.2d 724, 727 (9th Cir. 1985)); *Ohio v. Collins (In re Madeline Marie Nursing Homes),* 694 F.2d 433, 436 (6th Cir. 1982); *ITT–Industrial Credit Co. v. Hughes,* 594 F.2d 384, 386 (4th Cir. 1979). The lower courts ignored the fact that there were no independent directors of Coastal. Debtor controlled all of Coastal's operations. Merely because the Debtor made the transfers from Coastal's bank account, rather than transferring the Net Proceeds to himself first, makes no difference in terms of whether the money was transferred for the Debtor's benefit,

and thus, the transfers were disguised dividends vesting a property right in the Estate to the Net Proceeds.

**D.    Coastal Was the Debtor's Alter Ego; It Was Estate Property**

       1.    Alter Ego is a Remedy Available to the Trustee

There can be no dispute that the Debtor was the *de facto* beneficiary of the Net Proceeds, and used Coastal as his alter ego. Bankruptcy courts have held that under such facts, the bankruptcy estate is the true owner of such non-debtor assets. *See In re Singh*, 2019 WL 1231146, at *6-*7 (stating that property of the debtor includes not only property nominally held by the debtor, but also property held by the debtor's alter ego); *Stout*, 649 F. App'x at 623 ("[P]roperty owned by a corporation may be considered a debtor's property where the corporation was the debtor's alter ego."). Indeed, "[i]n bankruptcy, an alter ego is a nominal third party that has no substantive existence separate from the debtor, and property purportedly held by that third party is, therefore, the debtor's own property." *Chantel v. Pierce*, 2015 WL 3988985, at *6 (B.A.P. 9th Cir. July 1, 2015), *aff'd*, 693 F. App'x 723 (9th Cir. 2017) (citing *Int'l Fin. Servs. Corp. v. Chromas Techs. Can., Inc.,* 356 F.3d 731, 734, 736–737, 740 (7th Cir. 2004); *In re Pisculli,* 426 B.R. 52, 61 (Bankr. E.D.N.Y. 2010) (assets of an alter ego of debtor at the time of filing the bankruptcy petition are property of the estate); *see also Stout*, 649 F. App'x at 623 ("While the transfer of assets owned by a corporation normally does not constitute a transfer by a debtor of his or her own property, property owned by a corporation may be considered a debtor's property where the corporation was the debtor's alter ego.").

As the BAP stated in *Singh* "[i]n many cases, the alter ego doctrine is used to hold shareholders liable for the debts or conduct of a corporation. But the doctrine can also be employed to determine whether a corporation or its shareholder is the true owner of property." *Singh*, 2019 WL 1231146, at *6. This

is what the Trustee seeks to do through the Complaint—determine whether Coastal or the Debtor was the true owner of the Net Proceeds.

Yet, in this case, the BAP distinguished *Singh,* stating:

> In that case, we considered § 727(a)(2), which provides that the court must deny the debtor's discharge if (among other things) the debtor has "concealed" property of the debtor or the estate. Stashing money or property in a corporation can amount to "concealment" of "property of the debtor" under § 727(a). These considerations do not apply to avoidance claims under § 549.

**1-ER-24**. The bankruptcy court also rejected the Trustee's argument simply stating that "alter ego theory alone does not bring Coastal's assets into the bankruptcy estate." **1-ER-71**.

However, the issue in *Singh* was not whether the debtor concealed property; rather, it was whether prepetition transfers from the debtor's corporation to creditors and the debtor were property of the debtor. *Singh*, 2019 WL 1231146, at *7 ("In this case, the bankruptcy court was free to employ the alter ego doctrine in order to determine whether the transferred monies were 'property of the debtor.' . . . Thus, the bankruptcy court did not err in finding that the transferred assets were 'property of the debtor' under § 727(a)(2)(A)"). Contrary to the BAP's statement, the same considerations under 11 U.S.C. § 727(a)(2)(A) in *Singh* to determine whether the transferred property was property of the debtor (prepetition) or property of the estate (postpetition) apply to avoidance claims in the Complaint.

### 2. The Lower Courts Misapplied California Authority on the Use of Alter Ego

Furthermore, the BAP held that California does not recognize reverse veil piercing (the satisfaction of a debt of an individual through the assets of an entity of which the individual is an insider). In so ruling, the BAP heavily relied on the case of *In re Mihranian,* 2017 WL 2775043 (9th Cir. BAP June 29, 2017). Yet, the *Mihranian* decision itself relied upon outdated California law, which has since

31

been limited to its facts. *See id.* at *6-7 (citing *Postal Instant Press, Inc. v. Kaswa Corp.,* 162 Cal. App. 4th 1510, 1522 (2008)).

A subsequent California appellate case from the same district and division (Fourth District, Division 3), rejected the argument that *Postal Instant Press* "established a broad and all-encompassing rule of no reverse piercing in California." *Curci Investments, LLC v. Baldwin*, 14 Cal. App. 5th 214, 220 (2017) (finding that application of alter ego to find assets of an LLC to be assets of debtor may be appropriate where, as here, there were no innocent owners).

Contrary to the BAP's ruling, *Mihranian's* reliance on *Postal*, itself, is not contrary to the Trustee's position here. *Postal* recognized that its rejection of reverse piercing rested on (i) protection of innocent shareholders and creditors and (2) the availability of other legal remedies, such as fraudulent transfer. *Postal*, 162 Cal. App. 5th at 1524. Under California law as expressed in *Curci*, the concerns raised by the *Postal Instant Press* court are not applicable here. First, there are no innocent shareholders, as the Estate is the sole shareholder. Second, the Trustee did not assert a right to the entirety of the proceeds of the Liquidation Event but merely those proceeds net of the payment of all then-existing legitimate creditors. Thus, the Trustee's theory served to protect legitimate creditors of the Estate and Coastal. The court should have found that the alter ego doctrine may apply, but its application would ultimately be a question of fact. *Curci,* 14 Cal. App. 5th at 222–23. In other words, and at minimum, the Trustee's Complaint should not have been dismissed at the pleading stage.

3.   The Complaint Adequately Pled Alter Ego

With *Curci* in mind, the Complaint sufficiently pleads that Coastal should be treated as the Debtor's alter ego under the circumstances. "California recognizes alter ego liability where two conditions are met: First, where 'there is such a unity of interest and ownership that the individuality, or separateness, of the said person

and corporation has ceased;' and, second, where 'adherence to the fiction of the separate existence of the corporation would ... sanction a fraud or promote injustice.'" *In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010) (quoting *Wood v. Elling Corp.,* 572 P.2d 755, 761 n.9 (1977)). Factors suggesting an alter ego relationship include, among other things,

> the unauthorized diversion of corporate funds or assets to other than corporate uses [citation]; the treatment by an individual of the assets of the corporation as his own [citation]; . . . the identical equitable ownership in the two entities; . . . identification of the directors and officers of the two entities in the responsible supervision and management; sole ownership of all of the stock in a corporation by one individual or the members of a family [citation]; . . . the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation [citation]; . . . the disregard of legal formalities and the failure to maintain arm's length relationships among related entities [citation]; the use of the corporate entity to procure labor, services or merchandise for another person or entity [citation]; [and] the diversion [of assets from a corporation by or to a] stockholder or other person or entity, to the detriment of creditors.

*Associated Vendors, Inc. v. Oakland Meat Co., Inc.,* 210 Cal. App. 2d 825, 838–39 (1962) (citations omitted). "No one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied." *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 539 (2000); *see also In re Singh*, 2019 WL 1231146, *6-*7 (setting forth broad inquiry in applying alter ego doctrine to non-debtor corporation of individual debtor in finding that non-debtor corporation was alter ego).

The Complaint sufficiently pleads facts as to each factor. Taking these factual allegations as true, the Complaint sufficiently alleges facts to support an alter ego relationship between Debtor, Coastal and Debtor's related entities. Contrary to the bankruptcy court's conclusion, a finding that Coastal is Debtor's alter ego alone is sufficient to bring Coastal's assets, including the Net Proceeds,

33

into the Debtor's Estate. Thus, the Complaint adequately pleads that the Proceeds are property of the estate under Section 541(a)(1) as the Debtor had an equitable interest in the assets of his alter ego. *See Unite Here Health*, 2014 WL 2527121, *5 (debtor has an equitable interest in its alter ego's assets).

**E. Debtor's Sole Control of Coastal is Sufficient to Show the Estate's Ownership of Coastal**

In this case, the Trustee's simplest argument as to why the Net Proceeds belong to the Estate is his last: when the Debtor liquidated the assets of his wholly owned, non-operating corporation, the remaining assets (Net Proceeds) belonged to the Estate because the Debtor was the sole shareholder. Both lower courts improperly rejected the Trustee's cited authorities in support of this proposition.

### 1. Control Indicates Ownership

As the 100% owner of Coastal, the Estate held legal "control" of Coastal. Cal. Corp. Code § 160. As pled in the Complaint, at the relevant time, Coastal consisted of a bank account and nothing more: no operating business, no assets, no outstanding creditors. Numerous courts have held that, in this context, Coastal itself would belong to the bankruptcy estate notwithstanding its technical corporate separateness. *See In re Milden*, 111 F.3d 138, *3 (9th Cir. 1997) (unpublished) ("Once appointed, the Trustee acted as representative of the estate pursuant to 11 U.S.C. § 323(a), with the power and duty to manage all of the assets of the estate, including the stock, books and records in a wholly-owned corporation.") (citing *In re Baker*, 68 B.R. 360, 363 (D. Or. 1986) ("since the corporation was wholly owned by the debtors, it became an asset of this estate, upon the filing of the Chapter 11 petition" citing 11 U.S.C. § 323(a)); *In re Yona*, 2017 WL 2491493, *7 (C.D. Cal. June 8, 2017) (court found that corporation owned 100% by individual debtor "was itself an asset of the estate"); *In re Pisculli*, 2009 WL 700059, *3 ("Ordinarily, the stock of a debtor's closely owned corporation, and consequently

that value of its assets, after payment of the corporation's debts, is property of a debtor's bankruptcy estate."), *aff'd*, 426 B.R. 52 (E.D.N.Y. 2010), *aff'd*, 408 F. App'x 477 (2d Cir. 2011). Because the Debtor was no longer vested with any control of Coastal, the corporation was controlled by the Estate and thus belonged to the Estate. Yet, both the bankruptcy court and BAP rejected the Trustee's reliance on voluminous authority on this issue.

The Ninth Circuit Court of Appeals recognized this concept in *In re Retz*, 606 F.3d 1189, 1202–03 (9th Cir. 2010). In *Retz*, post-petition, the debtor orchestrated a sale of the assets of a limited liability company in which he held a 6% interest to an entity that was owned by the debtor's mother. *Id.* at 1202. The debtor did not consult the chapter 7 trustee prior to the sale. The Ninth Circuit noted that because the debtor's estate held a 6% interest in the limited liability company, the debtor should have informed the chapter 7 trustee prior to the sale. *Id.* at 1203. Affirming the bankruptcy court's denial of the debtor's discharge under 11 U.S.C. § 727(a)(2), the Ninth Circuit agreed with the bankruptcy court that the debtor's 6% interest in the limited liability company "was unquestionably property of the estate and the sale was a disposition of property." *Retz*, 606 F.3d at 1203. Retz's analysis should control the outcome here; indeed, an essential element of a 727 denial of discharge claim is that the property in question was "property of the estate." 11 U.S.C. § 727(a)(2)(A) & (B).

2.  Corporation Wholly Owned by the Debtor Belongs to the Estate

Moreover, bankruptcy courts have routinely held that the primary asset of a closely held corporation owned and/or controlled by the debtor is property of the bankruptcy estate. *See*, *e.g.*, *Baker*, 68 B.R. at 363–65 (holding that the debtor's wholly owned corporation became an asset of the bankruptcy estate upon filing of the debtor's chapter 11 petition such that the chapter 11 trustee could not make payments from the corporation to himself and others without the court's approval);

*In re Walhof Properties, LLC*, 613 B.R. 479 (Bankr. M.D. Fla. 2020) (holding that surplus proceeds resulting from sale of property owned by corporate chapter 11 debtor were not excluded from property of its direct and indirect equity holders' individual chapter 7 estates); *In re Hollingsworth,* 224 B.R. 822, 829 (Bankr. M.D. Fla. 1998) (airplane which was owned by debtor's corporation and not by debtor himself was considered to be property of the debtor for purposes of denying debtor's discharge under 11 U.S.C. § 727(a)(2)); *In re Beshears,* 196 B.R. 464, 467 (Bankr. E.D. Ark. 1996) (real property owned by a closely held corporation in which debtor owned 50% of the stock was property of the estate, such that the post-petition transfer of the property was avoidable pursuant to 11 U.S.C. § 549); *In re Hill*, 265 B.R. 296, 300 (Bankr. M.D. Fla. 2001) (the sole asset of a closely held corporation owned by the debtor was property of the estate such that the post-petition transfer of the asset was avoidable pursuant to 11 U.S.C. § 549).

In *In re Yona*, the district court found that an individual's wholly owned corporation was an asset of the estate and that the trustee had standing to challenge liens placed on that corporate entity:

> Debtor Caroline Yona owned 100% of the shares of Yona Inc. Because "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case," § 541(a)(1), the estate owned 100% of Yona Inc.
>
> **The Dayco Liens encumbered the assets of Yona Inc., and Yona Inc. was itself an asset of the estate**. Any claims attacking the validity or enforceability of the Dayco Liens belonged to the Trustee, who had standing to pursue such claims as a representative of the estate charged with liquidating assets for the benefit of creditors. The reason is that the Dayco Liens encumbered estate assets, meaning that any action to invalidate those liens would free up additional assets to be administered for the benefit of creditors. By bringing in additional assets to the estate, an action attacking the Dayco Liens would redress injury to the Debtors (the injury being the deprivation of the assets encumbered by the Dayco Liens). Such an action qualifies as a claim of the debtor which the Trustee has statutory authority to assert. In

> sum, any and all claims attacking the validity and/or enforceability of the Dayco Liens—whether brought under the theory that the Dayco Liens were voidable as a fraudulent transfer, were voidable based on lack of consideration, or were voidable for any other reason— belonged to the Trustee.

2017 WL 2491493, at *7 (emphasis added).

*Yona* is on all fours with *In re Pisculli*, which involved the debtor's sale of all assets (*i.e.*, a liquidation) of a non-debtor corporation wholly-owned by the debtor. In *Pisculli*, prior to the petition date, the debtor was the owner and sole shareholder of three corporations, LJC Truck Service Inc., J.R. Materials Corp. and A.N. Leasing Corp. *Id.*, *1. Approximately five months after the petition date, and while the debtor's chapter 13 case was pending, the debtor liquidated the assets owned by A.N. Leasing Corp. and used the sale proceeds to pay creditors of the debtor's other businesses and transferred $80,000 to the debtor's wife. *Id.* A month later, the debtor's chapter 13 case was converted to one under chapter 7. *Id.* Thereafter, two of the debtor's creditors filed a complaint objecting to the debtor's discharge under section 727(a)(2)(B) based on the transfers. *Id.* The bankruptcy court found that the sale proceeds constituted a post-petition transfer of property of the estate and denied the debtor's discharge. *Id.*, *2. In coming to this decision, the court found

> . . . that the Debtor had more than a mere derivative interest in the transferred property. Once the Debtor liquidated the assets of A.N., the Debtor had a ***direct interest*** in the proceeds.

*Id.*, at *3 (emphasis added).

In relevant part, the court reasoned that:

> The Debtor was the sole shareholder and owner of A.N. The Debtor directed the Sale of the Assets of A.N. and paid off the remaining obligations of A.N. Debtor and his wife testified that once the notes on A.N.'s trucks were paid, A.N. had no other debts and was no longer conducting any business. ***Having liquidated the Assets, equity for the shareholders was created and the Debtor***

37

> ***as the corporation's owner and direct beneficiary had full control over the Proceeds****.*

*Id.* (emphasis added).

The bankruptcy court's ruling was affirmed by the district court in *In re Pisculli*, 426 B.R. 52 (E.D.N.Y. 2010), wherein in the court found that:

> It was not clear error for the bankruptcy court to find that since appellant was the only person with any interest in A.N. Leasing after it liquidated all of its assets and effectively ceased to exist, he had a direct interest in the proceeds from the sale of those corporate assets.

*Id.* at 60; *see also In re Mosher*, 417 B.R. 772 (Bankr. N.D. Ill. 2009).

As the *Mosher* court held:

> … since the Debtor was the only person with any interest remaining in the defaulting corporation after this purchase, the assets of the corporation were effectively liquidated to him (since he would otherwise only be holding the assets in trust for himself) and the corporation completely ceased to exist. ***Thereafter, all assets of the corporation were the assets of the Debtor and all purported actions of the Debtor on behalf of the defunct corporation were actually the actions of the Debtor.***

417 B.R. at 780 (emphasis added).

The *Pisculli* district court decision was upheld by the Second Circuit, which held that "the bankruptcy court did not err in holding that the truck sale proceeds were property of the bankruptcy estate because [the debtor], as sole owner and shareholder of A.N. Leasing Corp., had full control of those proceeds." *In re Pisculli*, 408 F. App'x. 477, 479 (2d Cir. 2011).

Although the bankruptcy court rejected the Trustee's reliance on *Pisculli*, the reasoning in *Pisculli* follows Ninth Circuit precedent and, more importantly, is wholly consistent with California Supreme Court precedent in *Miller* as respects a shareholder's ownership interest of the net sale proceeds following the sale of all

of the corporation's assets. *See Miller*, 17 Cal. 2d at 436; *see also Fowler*, 400 F.3d at 1018.[5]

        3.    The Estate May Recover from Third Parties Where the Debtor De-Valued Coastal

Courts have allowed fraudulent transfer claims where a debtor's improper acts caused dilution in the value of corporate shares. For example, in *DZ Bank AG Deutsche Zentral-Genossenschaft Bank v. Meyer*, 869 F.3d 839, 843–44 (9th Cir. 2017), the Ninth Circuit Court of Appeals held that the debtors' pre-petition transfer of assets out of a corporation in which one of the debtors was 100% shareholder was a fraudulent transfer under the Washington Fraudulent Transfer Act, which act is identical to California Uniform Voidable Transfer Act. In coming to its conclusion, the Ninth Circuit Court of Appeals looked to what other courts have concluded when faced with similar circumstances and discussed the cases *Wiand v. Lee*, 753 F.3d 1194 (11th Cir. 2014), *Reilly v. Antonello*, 852 N.W.2d 694 (Minn. Ct. App. 2014), and *In re Nickeson*, 2014 WL 6686524, *11 (Bankr. D.S.D. Nov. 25, 2014).

In *Reilly*, the court "rejected a corporate officer's argument that it was the corporation, not the officer, that legally diluted the corporation's shares and thereby reduced the officer's ownership from 100% to 2%." *DZ Bank*, 869 F.3d at 834. "The court refused to 'ignore[ ] the reality that [the officer] was exclusively responsible for the actions of the corporation and that he fraudulently transferred assets to the detriment of his creditors.'" *Id.* (quoting *Reilly*, 852 N.W.2d at 701). "The court reasoned that '[t]o allow a sole director, officer, and shareholder to

---

[5] The bankruptcy court cited to *In re Thurman*, 901 F.2d 839, 841 (10th Cir. 1990) for the proposition that "[t]he words: 'Property of the debtor,' are not the same as 'property in which the debtor has a derivative interest.'" *Thurman* is not inconsistent with *Pisculli*. *Thurman* considered whether the debtor had a direct interest in the value of non-liquidated corporate assets and concluded that it was a mere derivative interest. *Pisculli* merely answered the follow-up question of what happens to the debtor's derivative interest when all of a corporation's assets are then liquidated—the derivative interest becomes direct.

mask his fraudulent actions behind the facade of a closely held corporation would defy the plain meaning and intent of the Minnesota Uniform Fraudulent Transfer Act.'" *Id.* (quoting *Reilly*, 852 N.W.2d at 701).

Relying on *Reilly*, *Wiand*, and *Nickeson*, the *DZ Bank* court reasoned:

> If MI had retained the $385,000 in assets, DZ Bank would have been able to enforce any judgment against the Meyers, prior to their filing for bankruptcy protection, by executing against Louis Meyer's 100% ownership interest in MI to satisfy $385,000 of its claim. *See* Wash. Rev. Code § 6.17.090 ("All property, real and personal, of the judgment debtor that is not exempted by law is liable to execution."). When Louis Meyer indirectly transferred all of MI's assets to another corporation, he, as in *Wiand*, *Antonello*, and *Nickeson*, depleted the value of his assets to the detriment of his creditors. His shares in MI became worthless as a result of his actions as MI's sole owner and shareholder, while, even after filing for bankruptcy, he continued to receive payments from IC4U. In other words, he prevented DZ Bank from collecting $385,000 of the debt he owed.

*DZ Bank*, 869 F.3d at 843.

Under *DZ Bank*, if the Debtor had made the transfers of the Net Proceeds prior to the Petition Date, those transfers would be avoidable as to third parties by the Trustee under the California Uniform Avoidable Transfer Act and 11 U.S.C. § 548. The result should be no different when the Debtor made the transfers post-petition. The transfers of the Net Proceeds depleted the value of the Debtor's most valuable asset, making the shares in Coastal worthless to the detriment of the Estate's creditors. "To allow a sole director, officer, and shareholder to mask his fraudulent actions behind the facade of a closely held corporation would defy the plain meaning" and intent of the Bankruptcy Code. *Reilly*, 852 N.W.2d at 701.

The Debtor, himself, repeatedly recognized that he had no authority to reinvest the Net Proceeds or do anything with the Net Proceeds save to distribute them to the Estate absent Estate approval to do otherwise. Those admissions were contained in quarterly reports submitted to the bankruptcy court whereby the

40

Debtor advised the bankruptcy court that he was working on a new business plan to submit to the shareholders after the Liquidation Event. **2-ER-151–196**.

Under Section 541(a)(1), any "legal or equitable interest" held by the Debtor in Coastal as of the Petition Date is property of the Estate. On the Petition Date, the Debtor had a legal and equitable interest in the assets available for distribution upon a Liquidation Event of Coastal. That contractual right and the right to the proceeds from the shares of Coastal transferred to the Estate on the Petition Date under Section 541(a)(1).

**F.  Even if the Net Proceeds are Not Property of the Estate, the Complaint Adequately Pleads a Claim for Conversion**

Both lower courts incorrectly assumed that the fact that the monies were never distributed to the Estate (and then dissipated), the Trustee could not maintain a claim for conversion. This was legal error. "In California, conversion has three elements: ownership **or** right to possession of property, wrongful disposition of the property right and damages." *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Services, Inc.*, 958 F.2d 896, 906 (9th Cir. 1992) (emphasis added). Although a "generalized claim for money [is] not actionable as conversion," [*Kim v. Westmoore Partners, Inc.*, 201 Cal. App. 4th 267, 284 (2011) (quoting *Vu v. California Commerce Club, Inc.*, 58 Cal.App.4th 229, 235 (1997)) (alteration in original)], a claim for money is actionable as conversion when "there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment. [Citation.]" *Kim,* 201 Cal. App. 4th at 284 (quoting *McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457, 1491 (2006)).

Here, the Estate had a right to possession of the Net Proceeds because once the Liquidation Event occurred, the Articles mandated that the Net Proceeds be distributed to the shareholders. The Estate as the sole shareholder of Coastal thus

has a right to possession of the Net Proceeds. Further, the Net Proceeds are a specific identifiable sum. Defendants in the Adversary Proceeding have wrongfully taken possession of the Net Proceeds, which right to possession solely belonged to the Estate. *See Scottsdale Ins. Co.*, 2017 WL 8948063, at *3 (stating that jury found defendants who received plaintiff/shareholder's portion of an option payment liable for conversion because the defendants had "'intentionally and substantially interfere[d]' with [plaintiff's] right to possession" of a portion of the option payment, which was commensurate with his ownership interest in" the corporation). Moreover, the Estate has been damaged by the defendants wrongful conversion of the Net Proceeds because but for the defendants' conversion of the Net Proceeds, those proceeds would have been available to creditors of the Estate. Accordingly, the Trustee submits that the Complaint adequately alleges a claim for conversion.

## VI.

## CONCLUSION

Based on the foregoing, the Trustee respectfully requests that this Court enter an order vacating the Judgment and reversing the Orders of the Bankruptcy Court, and grant to the Trustee such other relief as this Court deems just and proper under the circumstances.

Dated: July 17, 2023        BG LAW LLP

By: _____
Steven T. Gubner
Jason B. Komorsky
Jessica L. Bagdanov
Jessica S. Wellington
Attorneys for Michael G. Kasolas,
Liquidating Trustee for the Robert
Brower, Sr. Liquidating Trust and
Appellant

# VII.

## CERTIFICATION AS TO INTERESTED PARTIES

The undersigned certifies that the following parties have an interest in the outcome of this appeal. These representations are made to enable the judges of the Court to evaluate possible disqualification or recusal:

1. Robert Brower, Sr., Debtor;

2. Michael G. Kasolas, Liquidating Trustee for the Robert Brower, Sr. Liquidating Trust;

3. Aurora Capital Advisors, Appellee;

4. Aurora Capital Advisors, LLC, defaulted defendant in the underlying adversary proceeding;

5. Med-Venture Investments, LLC, defaulted defendant in the underlying adversary proceeding;

6. Richard Babcock, Appellee;

7. Anthony Nobles, Appellee;

8. JRG Attorneys at Law, Appellee;

9. Oldfield Creely, LLP, Appellee;

10. Patricia Brower, solely as trustee of the Brower Trust (2015), dated June 30, 2015, defendant in the underlying adversary proceeding;

11. Great American Wineries, Inc., defendant in the underlying adversary proceeding;

12. Deerleaf Holdings, Inc., defendant in the underlying adversary proceeding;

13. Robert Brower, Jr., defendant in the underlying adversary proceeding;

14. Coastal Wine Services, LLC, defaulted defendant in the underlying

43

adversary proceeding;

15.    Wilford Buth Lindley, defaulted defendant in the underlying adversary proceeding;

16.    Pohanka of Salisbury, Inc., defendant in the underlying adversary proceeding; and

17.    Jaurigue Law Group, defaulted defendant in the underlying adversary proceeding.

## VIII.

## STATEMENT OF RELATED CASES

Appellant and his attorney are not aware of any cases and appeals pending in the United States Court of Appeals for the Ninth Circuit that would be deemed related to this appeal.

## IX.

## CERTIFICATION OF COMPLIANCE

The text in this brief is proportionally spaced.  The typeface is Times New Roman, 14-point.  The word count generated by Word for the portions subject to the restrictions of Circuit Rule 32-1, inclusive of text and footnotes, is 13,859.

Dated:  July 17, 2023            BG LAW LLP

By: _____
    Steven T. Gubner
    Jason B. Komorsky
    Jessica L. Bagdanov
    Jessica S. Wellington
Attorneys for Michael G. Kasolas,
Liquidating Trustee for the Robert
Brower, Sr. Liquidating Trust and
Appellant

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 15. Certificate of Service for Electronic Filing

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** | 23-60022

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

APPELLANT'S OPENING BRIEF

**Signature** | /s/ Jessica Studley    **Date** | Jul 17, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15**      *Rev. 12/01/2018*