**No. 23-60022**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

MICHAEL G. KASOLAS, LIQUIDATING TRUSTEE FOR THE ROBERT
BROWER, SR. LIQUIDATING TRUST,

Appellant,

v.

AURORA CAPITAL ADVISORS, et. al.

Appellees.

On Appeal from Partial Final Judgment Entered by the United States Bankruptcy
Court for the Northern District of California
Case No. 22-1215

_____

**APPELLEE OLDFIELD CREELY, LLP'S ANSWERING BRIEF**

_____

Louis H. Castoria – Bar No. 95768
Arthur Gaus – Bar No. 289560
Kaufman Dolowich & Voluck, LLP
425 California St, 21st Floor
San Francisco, California 94104
Tel: 415-926-7638
Fax: 415-926-7601
lcastoria@kdvlaw.com
agaus@kdvlaw.com
*Attorneys for Appellee*
Oldfield Creely, LLP

ii

## CERTIFICATION AS TO INTERESTED PARTIES

Pursuant to Federal Rules of Appellate Procedure Rule 26.1(a), Defendant-Appellee Oldfield Creely, LLP has no parent corporation, neither does any publicly held corporation own 10% or more of it stock.

**Signature** */s/ Louis H. Castoria*             **Date** August 23, 2023

# TABLE OF CONTENTS

**Page**

CERTIFICATION AS TO INTERESTED PARTIES ........................................... iii

I.     INTRODUCTION ....................................................................1

II.    STATEMENT OF JURISDICTION ...............................................1

III.   ISSUES PRESENTED ..............................................................2

IV.   STATEMENT OF THE CASE ....................................................3

V.     FACTUAL BACKGROUND........................................................5

VI.   BANKRUPTCY JUDGMENT AND BAP APPEAL....................................7

      A.     The FAC Memorandum Decision .......................................7

           1.     The FAC Memorandum Decision Correctly Determined that the Net Proceeds Were Not Estate Property .................................8

           2.     The FAC Memorandum Correctly Held that Alter Ego Liability Does Not Present a Cognizable Legal Basis............................8

      B.     The SAC Memorandum Decision .......................................9

      C.     54(b) Motion Entry of Judgment, and BAP Affirmation...................11

           1.     The BAP Affirmed the Bankruptcy Court's Findings Regarding the Liquidation Event with respect to 11 U.S.C 541(a)(1), 541(a)(6) or 541(a)(7) ............................................11

           2.     The BAP Affirmed the Bankruptcy Court's Findings With Respect to The Bankruptcy Trustee's Alter Ego Claims..........13

           3.     The BAP Rejected The Bankruptcy Trustee's Equitable Claims Regarding the Common Ownership and Control Between Debtor and Coastal................................................14

VII.   SUMMARY OF THE ARGUMENT ..............................................15

iv

VIII. ARGUMENT ...................................................................................16

    A.    Federal Rules of Civil Procedure 12(b)(6) ...........................16

    B.    Appellant Did Not and Cannot Adequately Plead That Debtor Has An Equitable Ownership Interest In Coastal's Corporate Assets ............17

        1.    Shareholders Own Only An Interest In Prospective Future Value of Shares .......................................................18

        2.    The Liquidation Event Did Not Create an Equitable Interest in the Net Proceeds.........................................................20

        3.    The Bankruptcy Court and BAP Did Not Err In Disregarding The Law of Corporate Dividends .............................................24

    C.    The Lower Courts Were Correct in Their Determination That Alter Ego Does Not Provide A Cognizable Basis For Relief .....................26

        1.    Alter Ego Is Not Limited Use Procedural Mechanism, Not A Remedy ....................................................................26

        2.    The Lower Court Did Not Misapply the Alter Ego Doctrine...28

    D.    Sole Control........................................................................29

        1.    Sole Control of Corporate Shares is Distinct From Ownership of Corporate Property .............................................29

        2.    Appellant's Assertions With Respect to Sole Control of Shares Relies on Non-California Authorities .......................................31

    E.    Conversion.........................................................................33

    F.    Dismissal Without Leave to Amend Was Not An Abuse of Discretion ........................................................................34

        1.    The Bankruptcy Court Applied the Correct Legal Standard ....35

        2.    The Bankruptcy Court's Conclusion is not Clearly Erroneous 35

IX. CONCLUSION ..............................................................................36

X.      FORM 17. STATEMENT OF RELATED CASES PURSUANT TO
        CIRCUIT RULE 28-2.6 ...................................................................................1

XI.     FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS.......................1

XII.    CERTIFICATE OF SERVICE .........................................................................2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal (2009) 556 U.S. 662, 6*78 (internal citation omitted)..................18

*Bank of America, N.A. v. Torkan (In re Yona),* Case No. 2:16-bk-17549-ER ........37

*Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544...................................... 17, 18

*Butner v. U.S.* (1979) 440 U.S. 48 ...............................................................36

*Communist Party v. 522 Valencia, Inc.* (1995) 35 Cal.App.4th 980........... 9, 14, 29

*Curci Investments, LLC v. Baldwin* (2017) 14 Cal.App.5th 214.............................32

*Dole Food Co. v. Patrickson* (2003) 538 U.S. 468.......................................33

*DZ Bank AG Deutsche Zentral-Genossenschaft Bank v. Meyer* (9th Cir. 2017) 869 F.3d
839................................................................................................36

*Estate of Mitchell* (1999) 76 Cal.App.4th 1378.............................................. 25, 26

*In re Anderson,* 572 B.R. 743 ....................................................................2, 3

*In re Baker* (Bankr. D. Or. 1986) 68 B.R. 360...............................................35

*In re First Protection, Inc.* (B.A.P. 9th Cir. 2010) 440 B.R. 821...........................20

*In re Fitness Holdings Intern., Inc.* (9th Cir. 2013) 714 F.3d 1141 ...........................35

*In re Gilead Sciences Securities Litigation* (9th Cir. 2008) 536 F.3d 1049 ...........18

*In re Paige* (Bankr. D. Utah 2009) 413 B.R. 882...........................................19

*In re Pisculli* (Bankr. E.D.N.Y., Mar. 4, 2009, No. 805-89678-REG) 2009 WL 700059,
at *1 ...........................................................................................36

*In re Plaza de Retiro, Inc.* (Bankr. D.N.M., Oct. 24, 2018, No. 09-10974-T11)
2018 WL 5304724, at *3 ...................................................... 25, 27

*In re Retz* (9th Cir. 2010) 606 F.3d 1189 ...................................................34

*In re Schaefers (B.A.P. 9th Cir. 2020)* 623 B.R. 777784-85 .................................30

*In re Schwartz*, 954 F. 2d 569 ....................................................................3

*In re Shapow (*Bankr. C.D. Cal. 2019) 599 B.R. 51.......................................34

vii

*In re Tracht Gut, LLC* (9th Cir. 2016) 836 F.3d 1146 ................................................39

*In re Traung's Estate* (1947) 30 Cal.2d 811 ............................................................23

*In re Veal* (B.A.P. 9th Cir. 2011) 450 B.R. 897 .......................................................39

*In re Yona* (Bankr. C.D. Cal., June 8, 2017, No. 2:16-BK-17549-ER) 2017 WL 2491493 ...................................................................................... 34, 35, 37

*Johnson v. Riverside Healthcare System, LP* (9th Cir. 2008) 534 ..........................18

*Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267...............................38

*Leslie v. Bartamian (In re Mihranian),* BAP No. CC-16-1378-KuFTa, 2017 WL 2775043..........................................................................................................31

*Leslie v. Bartamian (In re Mihranian),* BAP No. CC-16-1378-KuFTa, 2017 WL 2775043, at *5-6.............................................................................................33

*Manson v. Shepherd* (2010) 188 Cal.App.4th 1244 ................................................23

*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290 .......................................29

*Miller v. McColgan* (1941) 17 Cal.2d 432.......................................................... 20, 21

*Nelson v. Anderson* (1999) 72 Cal.App.4th 111 ......................................................21

*Penasquitos, Inc. v. Superior Court* (1991) 53 Cal.3d 1180 ...................................24

*Postal Instant Press, Inc. v. Kaswa Corp.* (2008) 162 Cal.App.4th 1510..............31

*Rice v. Downs* (2021) 73 Cal.App.5th 213 ...............................................................27

*Singh v. Singh (In re Singh),* BAP No. CC-17-1353-FLS, 2019 WL 1231146..........30

*Sonora Diamond Corp., supra,* 83 Cal. App. 4th 523 .............................................33

*Stephenson v. Drever* (1997) 16 Cal.4th 1167.................................................. 25, 27

*Usher v. City of Los Angeles* (9th Cir. 1987) 828 F.2d 556 ....................................18

**Statutes**

11 U.S.C. § 549 ................................................................................... passim

11 U.S.C. §§541(a)(1)........................................................................ 3, 10, 15, 40

11 U.S.C. 727(a) ..........................................................................................31

California Corporations Code § 2004 ....................................................13

Civil Rule 12(b)(6) ...........................................................................17

U.S.C. §§541(a)(1) ...........................................................................4

U.S.C. §§541(a)(6) ...........................................................................4

U.S.C. §§541(a)(7) .......................................................................4, 10

# APPELLEE OLDFIELD CREELY, LLP'S ANSWERING BRIEF

## I. INTRODUCTION

Appellee Oldfield Creely, LLP ("Appellee") hereby submits its Answering Brief in opposition to the appeal of Michael G. Kasolas, the Liquidating Trustee for the Robert Brower, Sr. Liquidating Trust (the "Bankruptcy Trustee") arising out of the  October 6, 2022 Partial Final Judgment (the "Judgment") entered by the United States Bankruptcy Court for the Northern District of California (the "bankruptcy court"]  as affirmed by the Bankruptcy Appellate Panel for the Ninth Circuit (the "BAP") on April 12, 2023.

## II. STATEMENT OF JURISDICTION

Appellee does not dispute the jurisdiction of this Court. The Judgment was affirmed by the BAP Pursuant 28 U.S.C. §§1157 and 1334. Prior to this appeal, 28 U.S.C. §158(b) provided jurisdiction to the BAP; currently this Court has jurisdiction by force of 28 U.S.C. §158(d).

Appellee further does not dispute the timeliness of this appeal of the appropriateness of this Court's consideration of this appeal under Federal Rules of Civil Procedure 54(b). Appellee does not dispute the timeliness of the instant appeal.

//

//

### III.   ISSUES PRESENTED

**Issue 1:** Can the Bankruptcy Estate state a claim that is has an equitable interest in Net Proceeds from the sale of the Wine Estate Property of Debtor's bankruptcy estate pursuant to 11 U.S.C. §§541(a)(1), (a)(6) and/or (a)(7) and therefore subject to avoidance action under 11 U.S.C. §549?

**Standard of Review for Issue Number 1:** Asset determinations with respect to property of a bankruptcy estate is a conclusion of law reviewed *de novo*. *In re Anderson,* 572 B.R. 743, 747 (B.A.P. 9th Cir. 2017).

**Issue Number 2:** Does alter ego provide a cognizable theory of relief in an avoidance action pursuant to 11 U.S.C. §549?

**Standard of Review for Issue Number 2:**   Asset determinations with respect to property of a bankruptcy estate is a conclusion of law reviewed *de novo*. *In re Anderson,* 572 B.R. 743, 747 (B.A.P. 9th Cir. 2017).

**Issue Number 3:** Can the Bankruptcy Estate state a claim an equitable interest in Coastal's Corporate Property by virtue of common ownership?

**Standard of Review:** Asset determinations with respect to property of a bankruptcy estate is a conclusion of law reviewed *de novo*. *In re Anderson,* 572 B.R. 743, 747 (B.A.P. 9th Cir. 2017).

Issue 4: Can a claim of conversion be the basis of an avoidance claim under 11 U.S.C. §549?

2

**Standard of Review:** Asset determinations with respect to property of a bankruptcy estate is a conclusion of law reviewed *de novo*. *In re Anderson,* 572 B.R. 743, 747 (B.A.P. 9th Cir. 2017).

Appellant did not request a rehearing or object to any evidence in the record. Any such issues should be deemed waived.

## IV.   STATEMENT OF THE CASE

Through this action, the Bankruptcy Trustee seeks to avoid post-petition transfers of property pursuant to 11 U.S.C. §549. This section permits a bankruptcy trustee to recoup transfers of a debtor's property where "debtor is a willing participant." *In re Schwartz*, 954 F. 2d 569, 573-74 (9th Cir. 1992). A post-petition payment may be recovered as an unauthorized transfer of estate property where certain requirements are met. However, in all cases, §549 can only be used to avoid transfers of *estate property*. Property for purposes of §549 is defined by 11 U.S.C. §§541(a)(1), which expressly states that the filing of bankruptcy petition creates an estate consisting of, in essence, all the debtor's legal or equitable in property as of the commencement of the case.

The property at issue is money in the form of proceeds generated by a sale of real property (the "Net Proceeds") owned by Coastal Cypress Corporation ("Coastal"). The debtor in the underlying bankruptcy, Robert Brower, Sr. (the "Debtor") owned all shares of Coastal's stock on the date of the bankruptcy

3

petition. The Net Proceeds were never transferred to the Debtor's bank account and remained in Coastal's corporate account until disbursed as payments to creditors and to settle tax bills.

In short, the Bankruptcy Estate can only state a theory of recovery under 11 U.S.C. §549 if it can state a claim that, on or after the date of the bankruptcy petition it had an equitable interest in the Net Proceeds. The Bankruptcy Estate offers four different theories as to why the Bankruptcy Estate has an equitable interest in Coastal's corporate property; none are availing.

First, the Bankruptcy Trustee claims it can state a claim for avoidance under 11 U.S.C. §549 by statutory construction of "property" U.S.C. §§541(a)(1)  , (a)(6) & (a)(7). However, Appellant's position fails to draw to clear distinctions in California law. The Bankruptcy Trustee fails to properly distinguish between a shareholder's right in the expected *value of corporate shares* and a shareholder's right to *corporate property*. In addition, the Appellant overlooks clear California authority differentiating liquidation of *corporate assets* and liquidation of the corporation *in its entirety*.

Second, Appellant claims, in force and effect, that alter ego allegations are sufficient under California law to state an avoidance claim under 11 U.S.C. §549. This claim misconstrues clear California authority on the character and scope of

4

alter ego theory. Alter ego serves as a theory of liability, not as a means for dissolving entities and combining assets.

Third, the Bankruptcy Trustee claims that, under California law, the Debtor's sole control of Coastal is sufficient to give the Bankruptcy Trustee an equitable interest in Coastal's corporate property and stating that fact alone is sufficient to state an avoidance claim under 11 U.S.C. §549. In service of this claim, Appellant cites unpublished, unpersuasive authority.

Fourth, the Bankruptcy Trustee argues that he can state a conversion theory against Coastal; on that basis he claims an equitable interest in Coastal's corporate property sufficient to support an avoidance claim under 11 U.S.C. §549. Because the Bankruptcy Estate never had an ownership or possessory interest in the Net Proceeds, any claim for conversion also fails as a matter of law.

## V. FACTUAL BACKGROUND

The sole property that the Bankruptcy Trustee seeks to avoid 11 U.S.C. §549 is money generated by the sale of real property owned by Coastal. The Net Proceeds came from the sale of real property (the "Wine Estate Property") owned by Coastal.

Coastal's April 15, 2015 sale of the Wine Estate Property came approximately 35 days after the Debtor's voluntary Chapter 11 Bankruptcy Petition, creating the bankruptcy estate on March 11, 2015 (the "Petition Date").

5

**[5-ER-825]**[1] The Schedule B included Debtor's interest in shares of Coastal Cypress Corporation ("Coastal") with a value of "unknown." **[5-ER-836]**

After the sale of the Wine Estate Property, the Net Proceeds, approximately $7,000,000.00 in a corporate account owned by Coastal amounted to the to the totality of Coastal's corporate property. The Net Proceeds were not transferred to Debtor's personal bank account.

Following both the creation of the Bankruptcy Estate and the sale of the Wine Estate Property, MUFG Union Bank N.A. ("the Bank") initiated an adversary proceeding. **[5-ER-864]** Through that proceeding, the bankruptcy court determined Debtor owned 100% of Coastal shares **[5-ER-689-705]**

After the petition date, Coastal still maintained significant unresolved liabilities, including but not limited to, tax liabilities. **[2-ER-228-9]**

On November 6, 2017, the Bank confirmed the chapter 11 reorganization plan. Nearly three years later, on September 15, 2020, the plan took effect and awarded the Bankruptcy Trustee with the power to prosecute claims on behalf the Debtor's Bankruptcy Estate and the power to liquidate all of Bankruptcy Estates' assets. Although Coastal remained a non-operating entity owned by the Debtor,

---

[1] For purpose of simplicity, Appellee's citations are all to Appellant's Excerpts of Record.

6

whose corporate assets had been liquidated through his personal bankruptcy, Coastal continued to make transactions as late as February/March 2021.

## VI.   BANKRUPTCY JUDGMENT AND BAP APPEAL

The Bankruptcy Trustee's initial Complaint seeking avoidance under 11 U.S.C. §549 (the "Original Complaint") was filed on July 22, 2021. Defendant-Appellant Oldfield Creely responded to the Original Complaint with a motion to dismiss as to each cause of action under Federal Rule of Civil Procedure 12(b)(6).

The bankruptcy court observed that Coastal continued to make corporate transactions until February or March 2021. **[3-ER-511, ln. 6-11]** On that basis the Net Proceeds were not property of the Bankruptcy Estate. Noting that the Bankruptcy Trustee's First, Fourth, Sixth, Ninth and Tenth claims all turned on whether the Net Proceeds were assets of the Bankruptcy Estate, the bankruptcy court granted the motion to dismiss with leave to amend. **[3-ER-512, ln. 5-10]**

### A. The FAC Memorandum Decision

The Bankruptcy Trustee filed a First Amended Complaint ('FAC") on December 23, 2021. In force and effect, the FAC contained the same theory of recovery as the Original Complaint, but added alter ego allegations. Again, Defendant Appellant moved to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6). On March 24, 2022, the bankruptcy court entered a Memorandum Decision (the "FAC Memorandum Decision") elaborating on its

earlier findings that the Net Proceeds could not be subject to avoidance under 11 U.S.C. §549 because they were not property of the Bankruptcy Estate. **[1-ER-69]**

### 1. The FAC Memorandum Decision Correctly Determined that the Net Proceeds Were Not Estate Property

In the FAC Memorandum Decision, the bankruptcy court correctly drew upon well-settled California law which recognizes that corporate forms have a "personality that is distinct from that of its shareholders" and therefore a shareholder "does not own the corporate property." **[1-ER-69]** Accordingly, the bankruptcy court recognized the distinction between Debtor's ownership of *shares in Coastal's stock* and non-ownership of *corporate property*, noting that "Thus, it is clear that had Debtor owned the real property instead of Coastal, then upon sale of the property, the funds received would be property of the estate. But the proceeds received from the sale of corporate assets—*i.e.* Coastal's real property— are not proceeds of Debtor's shares." **[1-ER-70]** Accordingly, the bankruptcy court found that the Net Proceeds were not estate property under 11 U.S.C 541(a)(1), 541(a)(6) or 541(a)(7).

### 2. The FAC Memorandum Correctly Held that Alter Ego Liability Does Not Present a Cognizable Legal Basis

Turning to the Bankruptcy Trustee's alter ego allegations **[1-ER-6-72]**, the bankruptcy court correctly noted that "under California law because alter ego is used to establish liability, not combine the assets of two distinct entities into one."

8

**[1-ER-70]** Drawing the distinction in California law between alter ego *liability*—
which breaches but does not combine corporate alter egos—and the total
dissolution of distinct corporate identities, the FAC Memorandum Decision
correctly held that the "theory of alter ego liability breaks down though the
corporate wall in order to create some liability on another party to prevent
injustice. It does not allow a parent to take assets out of a subsidiary." *See
Communist Party v. 522 Valencia, Inc.* (1995) 35 Cal.App.4th 980. On that basis,
the bankruptcy court concluded that the Bankruptcy Trustee's alter ego
allegations, as pled, did not create an equitable interest in the Net Proceeds and,
therefore, could not provide the basis for an 11 U.S.C. §549. Concluding that
"alter ego does not provide a cognizable theory for Coastal's assets to become
assets of Debtor's estate", the bankruptcy court granted Appellee's motion under
Federal Rules of Civil Procedure 12(b)(6) with leave to amend.

## B. The SAC Memorandum Decision

Taking leave to amend, the Bankruptcy Trustee filed a Second Amended
Complaint on April 12, 2022. In an attempt to bolster the claim that the
Bankruptcy Estate had an equitable interest in the Net Proceeds sufficient to make
it property for purposes of 11 U.S.C 541(a)(1), 541(a)(6) or 541(a)(7), the
Bankruptcy Estate set forth the premise that the sale of the Wine Estate Property
constituted a "Liqudation Event" under Coastal's Articles of Incorporation which

9

automatically converted the Net Proceeds from an expectancy interest into a cognizable property right. Defendant-Appellee responded with a *third* motion to dismiss under Federal Rules of Civil Procedure 12(b)(6). After hearing, the bankruptcy court entered a Memorandum Decision (the "SAC Memorandum Decision")

In granting the 12(b)(6) Motion, the bankruptcy court directly addressed the Bankruptcy Estate's claim that a Liquidation Event converted the Trustee's "expectancy interest" in the value of Coastal Shares into a property right. **[1-ER-50]** In reaching its conclusion the bankruptcy court correctly drew the distinction between a "Liquidation Event" as defined by the Articles of Incorporation, and the legal liquidation of Coastal under California law. **[1-ER-50]** The bankruptcy court observed that even in the event of a Liquidation Event, Coastal could not legally dissolve and disburse assets to shareholders until it paid all creditors and taxes. Taking note of the fact that the Parties did not dispute that Coastal still owed taxes until at least 2020 **[*Id.*]**, and that Coastal continued to make transactions under February or March 2021, **[*Id.*]** the bankruptcy court correctly concluded that until all creditors and takes has been paid, the Bankruptcy Estate's held only an expectancy interest in the future value of the shares rather than a vested property interest, "Debtor's estate only held an **expectancy interest in the future value of Coastal**, which was subject to Debtor's diminishment until Coastal was actually

liquidated." **[1-ER-51-52]** On this basis, the bankruptcy court granted the 12(b)(6) motion *without* leave to amend.

### C. 54(b) Motion Entry of Judgment, and BAP Affirmation

On October 6, 2022, the bankruptcy court entered an order granting the Bankruptcy Trustee's motion for partial judgment. In so doing, the bankruptcy court fully incorporated its previous findings in the FAC Memorandum Opinion with respect to 11 U.S.C 541(a)(1), 541(a)(6) or 541(a)(7) and alter ego theory as well as its findings in the SAC Memorandum Opinion with respect to the interest created by Coastal's articles of incorporation. **[1-ER-33]**

Following, the Trustee's timely appeal on October 13, 2022, the BAP, applying *de novo* review, entered a judgment affirming the bankruptcy court's entry of judgment and, in turn, the underlying basis as expressed in the FAC Memorandum Decision and the SAC Memorandum Decision.

### 1. The BAP Affirmed the Bankruptcy Court's Findings Regarding the Liquidation Event with respect to 11 U.S.C 541(a)(1), 541(a)(6) or 541(a)(7)

The BAP first addressed the Bankruptcy Trustee's claim that it had an equitable interest in the Net Proceeds sufficient to make it property under 11 U.S.C 541(a)(1), 541(a)(6) or 541(a)(7). **[1-ER-15-19]** In so doing, the BAP re-addressed the Bankruptcy Trustee's contention that the sale of the Wine Estate Property was a "Liquidation Event" under Coastal's articles, and, as a consequence, the Bankruptcy Estate had "an absolute right to the Net Proceeds . . . when Coastal was liquidated."

Echoing the distinction draw by the bankruptcy court, the BAP correctly reasoned that Debtor's ownership interest in Coastal's shares—which was indisputably property of the estate—and Debtor's interest in Coastal's corporate assets, *i.e.* the Net Proceeds were not equivalent. **[1-ER-15-16]** Looking to California's well-settled law of corporate forms, the BAP affirmed the principle that a shareholder "does not own the corporate property." [*Id.*] Furthermore the BAP specifically affirmed that a shareholder "simply has an expectancy" in corporate property and corporate earnings until liquidation or declaration of a dividend, a proposition that the BAP described as "beyond cavil." **[1-ER-15]** Citing to California decisional law, the BAP affirmed both the longstanding underlying principle that shareholders ownership of stock confers no interest the property or the earnings of the corporation and the bankruptcy court's conclusion that the funds constituting the Net Proceeds would become property of the estate only if and when either a) Mr. Brower received them or b) funds were set aside to pay dividends to him. **[1-ER-18-19]**

Furthermore, the BAP took aim squarely at the "fundamental flaw" in the Trustee's reasoning, a reasoning that he repeats in the instant appeal. **[1-ER-16-17]** The BAP in correctly observed that the Trustee's interpretation of the Liquidation Event "conflates liquidation of a corporation's assets with liquidation of the corporation itself." Drawing upon California Corporations Code §2004,

the BAP found that the force Liquidation Event described in Article III.B.2(c)(i) of Coastal's Articles of Incorporation was simply insufficient to change the shareholder interest from an expectancy into a vested property right. **[1-ER-19]**

### 2. The BAP Affirmed the Bankruptcy Court's Findings With Respect to The Bankruptcy Trustee's Alter Ego Claims

Next, the BAP squarely addressed the Bankruptcy Trustee's argument that alter ego theory is a cognizable legal theory for combining Coastal's corporate assets with Debtor's personal assets and therefore subject to avoidance under 11 U.S.C. 549. **[1-ER-22-25]** The argument was rejected by the BAP, affirming the bankruptcy court's findings.

Again looking to California law for the definition and legal consequences of the alter ego doctrine, the BAP correctly reasoned that under California law, the concern of the alter ego doctrine is not "whether the corporate entity should be disregarded for all purposes or whether its very purpose was to defraud the innocent party," but rather "whether in the particular case presented, justice and equity can best be accomplished and fraud and unfairness defeated by disregarding the distinct entity of the corporate form." *Communist Party v. 522 Valencia, Inc.* (1995) 35 Cal.App.4th 980, 993. **[1-ER-23]** Accordingly, the BAP held that California law construes alter ego as a mechanism to *impose liability*, not a mechanism for merging the assets of two entities into one. [*Id.*]

Turning then to the specific question of alter ego as applied to bankruptcy jurisprudence, the BAP correctly noted that the limited nature of alter ego doctrine could not function as a means to treat Debtor and Coastal as equivalents. Noting that the bankruptcy court "correctly applied" both general and specific California authority on the limited nature of alter ego, the BAP concluded that Appellant could not cannot plausibly use alter ego to plead that the Net Proceeds were property of the bankruptcy estate. Accordingly, the BAP affirmed the bankruptcy Court's dismissal first, third, fourth, fifth, eighth, and ninth causes of action in the SAC. **[1-ER-29]**

### 3. The BAP Rejected The Bankruptcy Trustee's Equitable Claims Regarding the Common Ownership and Control Between Debtor and Coastal

Separately, the BAP addressed the Bankruptcy Trustee's contention— repeated in the instant appeal—that the Net Proceeds became property of the estate under §541(a)(1) by virtue of Debtor's sole ownership and control of Coastal. The BAP correctly rejected this argument.

Again, correctly looking to California law, the BAP affirmed that the distinction between shareholders and the corporation itself is a "basic tenet of American corporate law." **[1-ER-19-22]** Correctly observing the application of that principle in the bankruptcy context, the BAP again noted that although Debtor owned 100 percent of Coastal's shares and that those <u>shares</u> became property of the Bankruptcy Estate

14

on the March 15, 2015 Petition Date, Debtor had no ownership interest Coastal's
<u>assets</u>, *i.e.* the Net Proceeds. Therefore, the Bankruptcy's equitable common
ownership claims could not provide a basis for a finding that the Net Proceeds were
§541(a)(1) and affirmed the bankruptcy court's dismissal under F.R.C.P. 12(b)(6).

## VII.   SUMMARY OF THE ARGUMENT

The BAP and the bankruptcy court did not err in finding that the Bankruptcy
Trustee could not state a claim that it had a property interest in the Net Proceeds
and therefore could not avoid transfers of the Net Proceeds in an action under 11
U.S.C. 549.

First, the bankruptcy court correctly interpreted the nature of the corporate form
and the nature of shareholder rights in considering the legal force of the
Liquidation Event under Coastal's Articles of Incorporation. The lower courts did
not misapply California law, specifically California Corporations Code §2004 in
concluding that, until Coastal provided for all debts and taxes, it could not dissolve
the corporation and distribute corporate assets to shareholders. Furthermore, the
lower courts correctly understood and applied the clear distinction between the
declaration of a dividend and a liquidation through bankruptcy.

Second, the bankruptcy court and the BAP did not err in concluding that alter
ego doctrine did not provide a cognizable legal basis for dissolving the distinction
between Debtor and Coastal and/or combining their assets for purposes of an 11

15

U.S.C. §549 avoidance claim. The lower courts correctly construed alter ego as a limited-purpose legal mechanism for the apportionment of *liability*, not an all-purpose mechanism for complete disregard of the corporate form.

Third, the lower courts did not err in rejecting the Bankruptcy Trustee's claim that the Debtor's complete ownership of Coastal created an equitable interest in the Net Proceeds for purposes of an 11 U.S.C. §549 avoidance claim. Correctly applying California authority, and rejecting the Bankruptcy Trustee's reliance on out-of-state authority, the BAP affirmed the well-settled principle that the character of shareholder ownership is distinct and different than ownership of corporate assets.

Fourth, the lower courts did not err in rejecting the Bankruptcy Trustee's conversion claim. The lower courts correctly recognized that a conversion claim, at minimum, requires a finding that the Bankruptcy had a cognizable property right in the Net Proceeds. Consequently, the lower courts correctly found that since the Bankruptcy Estate could not allege an equitable interest in the Net Proceeds, it could maintain a claim for conversion therein.

## VIII.  ARGUMENT

### A. Federal Rules of Civil Procedure 12(b)(6)

Under Civil Rule 12(b)(6), a court must dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a motion to dismiss, the plaintiff must present cognizable legal theories and sufficient factual allegations to

16

support those theories; in other words, "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544, 570; *see also Johnson v. Riverside Healthcare System, LP* (9th Cir. 2008) 534 F.3d 1116, 1121-22. A claim is facially plausible when the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal (2009) 556 U.S. 662, 6*78 (internal citation omitted). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level[.]" *Twombly,* 550 U.S. at 555, 570.

In deciding whether the complaint states a claim upon which relief can be granted, the court accepts the allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles* (9th Cir. 1987) 828 F.2d 556, 561. But the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litigation* (9th Cir. 2008) 536 F.3d 1049, 1055. Appellate review must also accept well-pleaded allegations, but not mere conclusions, as true.

### B. Appellant Did Not and Cannot Adequately Plead That Debtor Has An Equitable Ownership Interest In Coastal's Corporate Assets

As affirmed by the BAP, the bankruptcy court did not err in concluding that the Bankruptcy Trustee is unable state a claim upon which relief under 11

17

U.S.C. §549(a) can be granted. At minimum, recovery under this section requires a finding that the transfer was initiated by the debtor himself and involved property of the estate. "§549 provides a remedy to creditors when the debtor himself initiates an unauthorized post-petition transfer of estate property." *In re Paige* (Bankr. D. Utah 2009) 413 B.R. 882, 913–914, aff'd (D. Utah 2011) 443 B.R. 878, aff'd in part, rev'd in part (10th Cir. 2012) 685 F.3d 1160. As determined by the bankruptcy court and affirmed by the BAP, while Bankruptcy Estate undoubtedly owned Debtor's *shares* in Coastal, there is no basis is California law for finding that the Bankruptcy Estate could maintain an equitable interest in Coastal's *corporate assets*. On this basis, this Court should follow the path cleared by both the bankruptcy court and the BAP and re-affirm dismissal of this action under Federal Rules of Civil Procedure 12(b)(6) with prejudice.

### 1. Shareholders Own Only An Interest In Prospective Future Value of Shares

The Parties do not disagree on the basic analytical framework: 11 U.S.C. 549 directs that all legal and equitable property interests as of the petition date are property of the bankruptcy estate and "bankruptcy courts must look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case." *In re First Protection, Inc.* (B.A.P. 9th Cir. 2010) 440 B.R. 821, 828 (quoting *In re Pettit* (9th Cir. 2000) 217

F.3d 1072, 10780 Accordingly, California law concerning the property at issue is controlling.

The Parties do not dispute that Debtor's *shares* in Coastal were property of the estate. Rather, the dispute is whether Debtor maintained an equitable interest in Coastal's corporate assets, *i.e.* Net Proceeds generated from a sale of real property owned by Coastal. On this specific question, California law could not be more clear: A shareholder "does not own the corporate property." *Miller v. McColgan* (1941) 17 Cal.2d 432, 436 [110 P.2d 419] Rather, "[a] corporation has a personality distinct from that of its shareholders, and that the latter neither own the **corporate property nor the corporate earnings**. The shareholder simply has an expectancy in each, and he becomes the owner of a portion of each **only when the corporation is liquidated** by action of the directors or when a portion of the corporation's earnings is segregated and set aside for dividend payments." *Id.; see also Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 126, as modified on denial of reh'g (June 14, 1999) (stating that "[s]hareholders own neither the property nor the earnings of the corporation. . . . Shareholders own only stock . . .") Following these clear directives, the bankruptcy court stated "proceeds received from the sale of corporate assets—*i.e.* Coastal's real property—are not proceeds of Debtor's shares." **[1-ER-20]** The BAP also followed these clear directives and applying *de novo* review in concluding "only Mr. Brower's right (if any) to receive funds from

Coastal was property of the estate; the funds would become property of the estate only if and when Mr. Brower *received* them (or if and when funds were set aside to pay dividends to him)." **[1-ER-16, emphasis added]** This panel should not disturb these findings.

## 2. The Liquidation Event Did Not Create an Equitable Interest in the Net Proceeds

In an effort sidestep the direct logical path laid by California law relating to the nature of shareholder rights, the Bankruptcy Estate follows a long, winding and attenuated path in averring that the "Liquidation Event" as defined by Articles of Incorporation transformed Debtor's expectancy interest in the value of *Coastal's shares* into vested property interest in *Coastal's assets*. In force and effect, the Bankruptcy contends that after the sale of the Wine Estate Property no more "contingent events" remained and concludes that "[O]nce the Liquidation even occurred, the Articles mandated a distribution of Net Proceeds to the estate." In support of this conclusion looks past California statutory to authorities far outside the boundaries of bankruptcy jurisprudence and disregards key facts. The Court should remain on the clear path and affirm the findings of the bankruptcy court and the *de novo* review of the BAP.

//

//

### i. The Bankruptcy Estate Conflates the "Liquidation Event" under the Articles of Incorporation with Liquidation of the Corporation under California Law

The Trustee's argument rests on the premise that the sale of the Wine Estate automatically vested in Mr. Brower ownership of the Net Proceeds. According to Article III.B.2(c)(i), a "Liquidation Event" includes "a sale, lease, exclusive license or other disposition of all or substantially all of the assets, technology or intellectual property of the corporation . . . ." Upon the occurrence of a Liquidation Event, the stockholders "shall be entitled to receive" the remaining assets of the company. By its plain language, the Liquidation Event only describes a liquidation of Coastal's property.

The fundamental flaw in the Bankruptcy Trustee's argument is that he conflates liquidation of a *corporation's assets* with liquidation of the *corporation itself*. The sale (i.e., the conversion to liquid form) of a corporation's assets is not the same as liquidating the corporation. *In re Traung's Estate* (1947) 30 Cal.2d 811, 814. ("[E]ven the sale of all of the property of a corporation does not work a dissolution or liquidation of it. Liquidation of a corporation is defined as 'the operation of winding up its affairs by realizing its assets, paying its debts and appropriating the amount of profit or loss." *See also Manson v. Shepherd* (2010) 188 Cal.App.4th 1244, 1262–1263, reaffirming the well-settled definition of corporate liquidation as "the operation of winding up its affairs by realizing its

21

assets, paying its debts and appropriating the amount of profit or loss." [Internal citations omitted]

By conflating the Liquidation Event with a liquidation of the corporation, the Bankruptcy Estate's position is heedless to California Corporations Code §2004 which provides: "**After** determining that all the **known debts and liabilities** of a corporation in the process of winding up **have been paid or adequately provided for**, the board shall distribute all the remaining corporate assets among the shareholders according to their respective rights and preferences . . . ." [Emphasis Added] By its plain language, California Corporations Code §2004 mandates distribution of the corporation's assets **after** the debts and liabilities have been "paid or adequately provided for." *See Penasquitos, Inc. v. Superior Court* (1991) 53 Cal.3d 1180, 1191 *(*holding that a corporation cannot distribute its assets **until** it has paid or made provisions for all known debts and obligations). This is to say that until all debts and obligations were paid, shareholders in Coastal only had expectancy interest in the *future value* of Coastal, which was subject to diminishment until Coastal *was actually liquidated*.

The decision of both the bankruptcy courts and BAP were correct in their recognition that after the sale of the Wine Estate Property, Coastal still owed outstanding taxes and continued to make transactions into February 2021.

Therefore, it is both legally and factually correct that until the corporation was *actually* liquidated, the Bankruptcy Estate had only an expectancy in the future value of its shares in Coastal. The fact that subsequent events rendered the value of those shares to zero does not alter the analysis.

### ii. Appellant's Authorities on the Character of Corporate Ownership Are Inapposite

Furthermore, the authoritative support for the Bankruptcy Estate's description of the metamorphosis from "mere expectancy" into "vested property right" is unpersuasive. Citing to Civil War-era authorities on the general character on corporate powers, the Bankruptcy Estate concludes that the bankruptcy court and the BAP's reliance on Corporations Code §2004. The authoritative basis for Appellant's conclusion is both unavailing and inapposite.

In citing extensively, *Estate of Mitchell* (1999) 76 Cal.App.4th 1378, 1392 looks to the law of intestacy and community property for the premise that a potential for revocation of a right is the sole distinguishing characteristic of a vested property right. Similarly, Appellant cites to *Stephenson v. Drever* (1997) 16 Cal.4th 1167, 1177 and *In re Plaza de Retiro, Inc.* (Bankr. D.N.M., Oct. 24, 2018, No. 09-10974-T11) 2018 WL 5304724, at *3, analogizing the vesting character of corporate shares to corporate dividends. Neither comparison is persuasive.

The right at issue in *Mitchell,* 76 Cal.App.4th 1378 was a surviving spouse's interest in a tenancy-in-common where spouse died during marriage dissolution

proceeding. *Id* at 1392. Analyzing the change in character of the surviving spouse's property interest in the joint tenancy after the death of the other spouse, the *Mitchell* court concluded that a severance of a joint tenancy during a marriage dissolution did not violate the trial court's earlier TRO because it only effected the "expectancy interest" of the value of the right to survivorship of the other spouse. *Id.* However, the *Mitchell* decision rested heavily on an entirely different statutory apparatus, The California Family Code. *Id. at* 1393. This analysis has little bearing on the instant analysis originating in the overlay of the United States Bankruptcy Code and the California Corporations Code.

### 3. The Bankruptcy Court and BAP Did Not Err In Disregarding The Law of Corporate Dividends

The Bankruptcy Estate at Opening Brief sections V.B.3 and V.C claim, in essence, that because the sale of the Wine Estate Property was a Liquidation Event under Coastal's Articles of Incorporation, the Bankruptcy Estate's interest was that of a declaration of a corporate dividend. Although the declaration of a dividend changes a shareholder's expectancy into a vested property right, the Bankruptcy Estate's analogy ignores the factual nature of a dividend as a opposed to a bankruptcy liquidation, chiefly that a dividend is a *surplus, set aside for distribution* shareholders consistent with priority. Said another way, a dividend sets aside a non-zero amount of funds and distributes those funds according to shareholder status. By contrast, shareholders in a corporation may ultimately have

24

a share *value* of zero. Accordingly, any interest in a value above zero is a mere expectancy. *Stephenson* and *In re Plaza de Retiro, Inc*, *supra* are inapposite as they analogize the instant corporate liquidation to the expectancy created by the declaration of a corporate dividend.

Again, ignoring the clear factual difference between the declaration of a dividend and the sale of corporate property during a liquidation, the Bankruptcy Estate, at Section V.C, looks again to the law of corporate dividends, rather than liquidation, in support of its alternative premise that the corporate liquidation of Coastal was actually a corporate dividend in disguise, vesting the estate with property rights in the funds that constituted the Net Proceeds. The Bankruptcy Estate follows that because the distribution of the Net Proceeds *could* have been considered a divided *for tax purposes* it *must* be treated as a dividend in the bankruptcy analysis. The Bankruptcy Estate cites to *Rice v. Downs* (2021) 73 Cal.App.5th 213 for the premise that California Courts "recognize this concept." However, the Bankruptcy Trustee cites no authority supporting a conclusion that this construction is mandatory or even applicable in this instant setting—as the Bankruptcy Estate acknowledges, *Rice* relies entirely on California statutes relating to distributions made to members of a Limited Liability Corporation, not shareholders of a corporation. There is little reason to consider the Bankruptcy Trustee's authority on this point.

Secondly, in support of his argument, the Bankruptcy Trustee lists a series of benefits conferred by Coastal to Defendant-Appellees after the petition date and concludes that the lower courts *could have* treated those distributions as a dividend, but offers no fact or authority supporting why it was reversible legal error to <u>refrain</u> from doing so.

### C. The Lower Courts Were Correct in Their Determination That Alter Ego Does Not Provide A Cognizable Basis For Relief

The Bankruptcy Estate also uses the instant appeal to reboot his contention that alter ego provides a cognizable theory for treating combining Coastal's corporate property as equivalent to Debtor's personal property for purposes of 11 U.S.C §549. The lower courts did not err in rejecting this contention.

### 1. Alter Ego Is Not Limited Use Procedural Mechanism, Not A Remedy

Repeating arguments from his previous appeal, Appellant argues that and Coastal were alter egos of each other, such that the bankruptcy court should treat Coastal's assets as assets of the Bankruptcy Estate. However, as correctly noted by the BAP, under California law, the concern of the alter ego doctrine is not "whether the corporate entity should be disregarded for all **purposes** or whether its very purpose was to defraud the innocent party," but rather "whether in the particular case presented, justice and equity can best be accomplished and fraud and unfairness defeated by disregarding the distinct entity of the corporate form." *Communist Party v. 522 Valencia, Inc.* (1995) 35

Cal.App.4th 980 *see also Sonora Diamond Corp. v. Superior* Court (2000) 83

Cal.App.4th 523, 538 ("A corporate identity may be disregarded—the

'corporate veil' pierced—where an abuse of the corporate privilege justifies

holding the equitable ownership of a corporation liable for the actions of the

corporation.") California courts have made clear that the alter ego doctrine is

limited purpose mechanism to attribute liability for corporate subsidiaries for

acts of their parent corporation, not to wholly disregard the corporation's

existence. As the BAP's citation to California Supreme Court Authority *Mesler*

*v. Bragg Management Co.* (1985) 39 Cal.3d 290 explained:

> It is not that a corporation will be held liable for the acts of
> another corporation because there is really only one corporation.
> **Rather, it is that under certain circumstances a hole will be**
> **drilled in the wall of limited liability erected by the corporate**
> **form; for all purposes other than that for which the hole was**
> **drilled, the wall still stands.** When it is claimed that a parent
> corporation should be liable because it is the alter ego of its
> subsidiary, equity commands that the corporate wall be breached.
> Yet the wall remains: the parent is liable through the acts of the
> subsidiary, but as a separate entity.

> Equally apt was the BAP's citation to *In re Schaefers (B.A.P. 9th*

*Cir. 2020)* 623 B.R. 777784-85, construing alter ego in the bankruptcy

setting:

> **Alter ego is not a claim or cause of action that, when**
> **successful, treats the owner and the company as the same**
> **legal entity for all purposes.** Rather, it is a procedural device that
> permits courts to disregard the legal separateness between a

business entity and an owner for **limited purposes** — such as
where the corporate form is being used by the individuals to
escape personal **liability**, sanction a fraud, or promote injustice.
Typically, the entity's separate identity is disregarded so that the
corporation will be **liable for acts** of the stockholders or the
stockholders liable for acts done in the name of the corporation.
(emphases added) (citations and quotation marks omitted).

The Bankruptcy Estate again cites to *Singh v. Singh (In re Singh),* BAP No.

CC-17-1353-FLS, 2019 WL 1231146 (9th Cir. BAP Mar. 14, 2019) for the premise

that alter ego may inform an analysis of corporate transfers property within the

context of discharge petition under 11 U.S.C. 727(a). But as noted but the BAP

"These considerations do not apply to avoidance claims under §549." Appellant

cites no new authority rebutting the BAP's construction of *Singh* or compelling a

different conclusion. There is no basis to disturb the BAP's reliance on well-

settled authorities.

### 2. The Lower Court Did Not Misapply the Alter Ego Doctrine

With respect to its alter ego allegations, Appellant contends that the BAP

misapplied California authority on the use of alter ego. Specifically, Appellant

takes issues with the BAP's citation to *Leslie v. Bartamian (In re Mihranian),* BAP

No. CC-16-1378-KuFTa, 2017 WL 2775043. In sum, Appellant takes the position

that *Mihanian* is unsound to the extent that it relies on *Postal Instant Press, Inc. v.*

*Kaswa Corp.* (2008) 162 Cal.App.4th 1510 for a "broad, all-encompassing rule of

no reverse piercing in California." However, Appellant's citation *Curci*

*Investments, LLC v. Baldwin* (2017) 14 Cal.App.5th 214 is equally unsound.

28

While correctly noting that reverse piercing *may* be available in the context of an LLC, *Curci Investments* left undisturbed the rule against reverse veil piercing <u>with respect to corporations.</u> "Curci seeks to disregard the separate status of an LLC, not a corporation. The court's decision *Postal Instant Press* was expressly limited to corporations." *Curci Investments, LLC at* 222. In short, Appellant cites no authority supporting the premise that the reverse piercing contemplated by the instant alter ego allegations can be used <u>against a corporation</u>, only that it is <u>not categorically prohibited against an LLC</u>. This is simply insufficient to support a conclusion that the BAP misapplied the alter ego doctrine.

### D. Sole Control

Again arguing in the alternative, the Bankruptcy Trustee contends that it can state an avoidance claim under 11 U.S.C. 549 because Debtor's sole ownership and control of Coastal shares made the Bankruptcy Estate the equitable owner of Coastal's assets for purposes of §541(a)(1). In rejecting this claim, the BAP ruled correctly.

### 1. Sole Control of Corporate Shares is Distinct From Ownership of Corporate Property

The BAP acknowledged that while §541(a)(1) includes "all legal or equitable interests of the debtor in property as of the commencement of the case." However, it also returned to basic principles of the corporate form in determining that "it does not follow that Coastal's assets were property of Debtor's estate, because even the owner of all of a corporation's stock does not own the corporation's assets." *See Dole Food*

*Co. v. Patrickson* (2003) 538 U.S. 468, 474-75 (2003). The BAP's conclusion is compelled by the essential character of the of the corporate form. "A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities. . . . A corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary." *Sonora Diamond Corp., supra,* 83 Cal. App. 4th 523, 538.

This basic tenet applies in equal force in the bankruptcy context in California. *See, e.g., Leslie v. Bartamian (In re Mihranian),* BAP No. CC-16-1378-KuFTa, 2017 WL 2775043, at *5-6 (9th Cir. BAP June 29, 2017) (affirming the dismissal of a fraudulent transfer claim and holding that fees earned by the debtor's wholly-owned corporation were not the debtor's assets and "[t]o hold otherwise would ignore the legal separateness of [the corporation]"); *see also In re Shapow (*Bankr. C.D. Cal. 2019) 599 B.R. 51 (citing authority and holding that corporate assets did not belong to the debtor for the purposes of a §727(a)(4) claim). There is no present dispute that Debtor owned 100 percent of Coastal's *shares* or that those *shares* became property of Debtor's Bankruptcy Estate on the Petition Date. But nothing, not even common ownership, can be alleged that can fully erase the separateness of Coastal and Debtor as legal entities.

The Bankruptcy Trustee recycles his citations to *In re Retz* (9th Cir. 2010) 606 F.3d 1189 for the premise that the Ninth Circuit has "recognized the concept"

that sole control of a corporation can inform an analysis of property considerations under 11 U.S.C. 727(a). However, the BAP correct when it noted that *Retz* stands only for the "unremarkable proposition that a debtor's interest in a corporation becomes property of the estate." Bankruptcy Trustee's sole *California* authority submitted in support of this proposition is *In re Yona* (Bankr. C.D. Cal., June 8, 2017, No. 2:16-BK-17549-ER) 2017 WL 2491493, at *2 which does not support the Bankruptcy Trustee's argument. As noted by the bankruptcy court and affirmed by the BAP, *In re Yona* held that the debtors' estate included the debtors' shares in two wholly-owned corporations. [*Id.* at *2] However, nowhere *In re Yona* state that the assets of the two corporations were property of the debtors' estate. Appellant's construction of *In re Yona* stretches it far beyond its cognizable boundaries.

### 2. Appellant's Assertions With Respect to Sole Control of Shares Relies on Non-California Authorities

The Bankruptcy Trustee largely relies on cases that do not construe California law including Appellant's remaining authorities *In re Baker* (Bankr. D. Or. 1986) 68 B.R. 360. As noted by the BAP, the Ninth Circuit has made it clear that state law defines property rights for bankruptcy purposes. *In re Fitness Holdings Intern., Inc.* (9th Cir. 2013) 714 F.3d 1141, 1147 ("[A] court must determine whether the asserted interest in the debtor's assets is a 'right to payment' recognized under state law[.]" In so holding, the Ninth Circuit relied on the Supreme Court's decision in *Butner v. U.S.* (1979) 440 U.S. 48, 54 which stated that "Congress has generally left the determination

of property rights in the assets of a bankrupt's estate to state law." In California, the assets of a corporation, even a corporation with only one shareholder, are not the property of the shareholder. A bankruptcy court in this circuit may not disregard this principle of state law.

Accordingly, the BAP was wholly correct in its rejection of the Bankruptcy Trustee's "reliance on cases that are at odds with California law." Specifically, the BAP rejected reliance on *DZ Bank AG Deutsche Zentral-Genossenschaft Bank v. Meyer* (9th Cir. 2017) 869 F.3d 839 (a Ninth Circuit case decided under the Washington Uniform Fraudulent Transfer Act) and *In re Pisculli* (Bankr. E.D.N.Y., Mar. 4, 2009, No. 805-89678-REG) 2009 WL 700059, at *1, aff'd (E.D.N.Y. 2010) 426 B.R. 52, aff'd (2d Cir. 2011) 408 Fed.Appx. 477 (an unpublished decision from the bankruptcy court for the Eastern District of New York holding that "the Debtor had a direct interest in the Proceeds" after he liquidated the corporation's assets, paid its debts, and the corporation ceased operation). In doing so, the BAP applied the correct legal standard.

### i. The Bankruptcy Trustee's California Authorities Are Unpersuasive

Additionally, to the extent the Bankruptcy Trustee's cites to California authority for the premise that Debtor's sole ownership of Coastal shares, those citations, as noted by the BAP, do not support that conclusion. As by the BAP *In re Retz* (9th Cir. 2010) 606 F.3d 1189, 1203 stands only for the "unremarkable

32

proposition" that a debtor's interest in property becomes property of the estate. *Id.* (holding that the debtor's six percent interest in a corporation was property of the estate). This case simply does not support the Trustee's position that, if the debtor owns all of the stock of the corporation, the assets of that corporation are property of the estate.

The Bankruptcy Estate's reliance on *Bank of America, N.A. v. Torkan (In re Yona),* Case No. 2:16-bk-17549-ER, 2017 WL 2491493 (Bankr. C.D. Cal. June 8, 2017) for this proposition is similarly misplaced. Although the *In re Yona* bankruptcy court held that the debtors' estate included the debtors' shares in two wholly-owned corporations [*Id.* at *2], it never said that the assets of the two corporations were property of the debtors' estate. Rather, the court held that, because a creditor's liens affected **the debtors'** property, **as well as** the corporations' property, the trustee had exclusive authority to attack **those liens**. [*Id.* at *8] The Bankruptcy Trustee cannot point to similar such encumbrances in the present case.

### E. Conversion

Appellant's theory of conversion is derivative of his claim that Debtor's ownership in shares of Coastal Corporation was equivalent to ownership and control over Coastal's assets and property. As Appellant acknowledges, ownership or right to possession in the property is required element of a claim for conversion. Because, as discussed *supra*, Debtor had no personal ownership or possessory

33

rights to Coastal's property or assets, it is not possible for Appellant to maintain a claim for conversion.

Additionally, the Bankruptcy Trustee's contemplated conversion claim based on *Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267 ignores key facts. Specifically, the Bankruptcy Trustee skates right past the legal fact that unless and until Coastal <u>actually liquidated</u>, *i.e.* paid or provided for all debts, liabilities and taxes there was not and could not be a fixed, identifiable sum associated with shares of Coastal. Similarly, the Bankruptcy Trustee ignores the fact that Coastal continued to owe outstanding tax obligations and make transactions long after the sale of the Wine Estate Property. There is no basis for a conclusion that the interest generated by this contemplated claim can supply the basis for an avoidance claim under 11 U.S.C. 549. The Court should reject this argument.

### F. Dismissal Without Leave to Amend Was Not An Abuse of Discretion

A bankruptcy court's dismissal of a complaint without leave to amend is reviewed under a two-pronged abuse of discretion test. *In re Tracht Gut, LLC* (9th Cir. 2016) 836 F.3d 1146, 1150. first, whether the court applied the correct legal standard; and second, whether the factual findings supporting the legal analysis were clearly erroneous. *In re Veal* (B.A.P. 9th Cir. 2011) 450 B.R. 897, 914. A lower court's analysis is clearly erroneous when the court then determines findings

are "illogical, implausible, or without support in inferences that may be drawn from the record." "illogical, implausible, or without support in inferences that may be drawn from the record. *Id.*

### 1. The Bankruptcy Court Applied the Correct Legal Standard

In granting the 12(b)(6) motion, both the bankruptcy court and the BAP applied the correct the correct legal standard. The parties do not appear to dispute this issue. The BAP identified the operative question: can the Bankruptcy Trustee state an avoidance claim under 11 U.S.C. §549. **[1-ER-15-16]** Next, the BAP identified the correct legal standard, *i.e.* that questions concerning property rights under 11 U.S.C. §571(a)(1) are evaluated under applicable state law. *Id.*

### 2. The Bankruptcy Court's Conclusion is not Clearly Erroneous

The lower court decisions on the specific question of whether or not the Bankruptcy Estate had an equitable interest in the Net Proceeds was not clearly erroneous. Primarily, both the bankruptcy court and the BAP rendered their decision as a question of law. **[1-ER-4]** In short, it is not that the Bankruptcy cannot state avoidance claims on the facts in the operative complaint, it is that no such fact can exist. [*Id.*] However, even looking at the facts cannot compel a conclusion that the lower courts' conclusions are erroneous. The Bankruptcy Trustee correctly recognizes the equitable character of bankruptcy courts, it does not state a single fact or authority describing the inequities of the result. Indeed, a

fact-finder could observe the character of the Parties in this action and conclude that the same transactions were related to the legitimate dissolution corporate property between sophisticated parties represented by counsel. The Bankruptcy Trustee conclusory assumption that Coastal's use of the proceeds is illegitimate is, in actuality, unsupported.

Although Appellee is mindful of this Court's *de novo* review, the procedural record cannot be ignored. This is the Bankruptcy Trustee's fifth attempt to advance different versions of the same claim.

## IX.   CONCLUSION

Based on the foregoing Appellee Oldfield Creely LLP, Appellee respectfully requests that this Court affirms both the Judgment and Orders of the Bankruptcy Court and the Bankruptcy Appellate Panel.

Date:  August 21, 2023

KAUFMAN DOLOWICH & VOLUCK, LLP


*/s/ Louis H. Castoria*
Louis H. Castoria
Arthur S. Gaus
*Attorneys for Appellant Oldfield Creely, LLP*

36

# X. FORM 17. STATEMENT OF RELATED CASES PURSUANT TO

# CIRCUIT RULE 28-2.6

**9th Cir. Case Number(s)** _____23-60022_____

The undersigned attorney or self-represented party states the following:

[ X ]  I am unaware of any related cases currently pending in this court.

[  ]  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[  ]  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** _/s/ Louis H. Castoria_____ **Date** _August 21, 2023_____

# XI.    FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS

**9th Cir. Case Number(s)** 23-60022

I am the attorney or self-represented party.

**This brief contains**  8,257  **words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[  ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [  ] it is a joint brief submitted by separately represented parties;
    [  ] a party or parties are filing a single brief in response to multiple briefs; or
    [  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** */s/ Louis H. Castoria*                **Date** August 21, 2023

## XII.   CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of August, 2023, I electronically filed the foregoing **APPELLEE OLDFIELD CREELY, LLP'S ANSWERING BRIEF** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the CM/ECF system which will send notification of such filing to the following:

Leonard M. Shulman: lshulman@shulmanbastian.com
Jessica L. Bagdanov: jbagdanov@bg.law , ecf@bg.law
Steven Todd Gubner: sgubner@bg.law
Jason Komorsky: jkomorsky@bg.law, ecf@bg.law
Ryan Daniel O'Dea: rodea@shbllp.com, sswartzell@shbllp.com
Paul A. Rovella: paul@jrgattorneys.com , michelle@jrgattorneys.com

I also certify the document and a copy of the Notice of Electronic Filing was served on the following non-CM/ECF participants: None.

Signature:   */s/ Gwen Wagner*          Date: August 21, 2023
              *Paralegal to Louis H. Castoria*