No. 23-60022

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

In re Robert Brower, Sr.

Bankr. Case No. 5:15-bk-50801-MEH
Adv. Case No. 5:21-ap-05029-MEH

---

MICHAEL G. KASOLAS, LIQUIDATING TRUSTEE FOR THE ROBERT

BROWER, SR. LIQUIDATING TRUST,

Appellant,

v.

AURORA CAPITAL ADVISORS, et al.,

Appellees.

---

On Appeal from the Bankruptcy Appellate Panel for the Central District of
California, Case No. 22-1215

---

### APPELLANT'S REPLY BRIEF

Steven T. Gubner – Bar No. 156593
Jason B. Komorsky – Bar No. 155677
Jessica L. Bagdanov – Bar No. 281020
Jessica S. Wellington – Bar No. 324477
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Tel: 818-827-9000
Fax: 818-827-9099
sgubner@bg.law
jkomorsky@bg.law
jbagdanov@bg.law
jwellington@bg.law

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................1

II.     ARGUMENT.............................................................................9

        A.      Critical Case Law Disregarded By Lower Courts and Appellees.........9

        B.      Section 2004 of the California Corporations Code and
                *Penasquitos* are Wholly Consistent with the Trustee's Position ........14

        C.      The Claims in the Complaint are Not Barred by the Statute of
                Limitations.........................................................................17

                1.      The Provisions of the Plan Establish that the Claims
                        Did Not Accrue and the Statute of Limitations Was
                        Otherwise Tolled until the Effective Date ................................17

                2.      Alternatively, the Statute of Limitations was Tolled
                        Under the Adverse Domination Doctrine .................................21

III.    CONCLUSION ........................................................................22

IV.     CERTIFICATION OF COMPLIANCE.........................................................23

i

# TABLE OF AUTHORITIES

Page

## Cases

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ..................................................................................16

*Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of
California*,
　522 U.S. 192 (1997) ..................................................................................18

*Blizzard Energy, Inc. v. Schaefers*,
　71 Cal. App. 5th 832 (2021) .....................................................................13

*Citicorp Acceptance Co. v. Robison (In re Sweetwater)*,
　884 F.2d 1323 (10th Cir.1989) .................................................................20

*Collins v. County of Los Angeles*,
　241 Cal. App. 2d 451 (1966) ....................................................................18

*Curci Investments, LLC v. Baldwin*,
　14 Cal. App. 5th 214 (2017) .....................................................................13

*Duvoisin v. East Tenn. Equity Ltd. (In re Southern Indus. Banking Corp.)*,
　59 B.R. 638 (Bankr. E.D. Tenn. 1986) ....................................................20

*DZ Bank AG Deutsche Zentral-Genossenschaft Bank v. Meyer*,
　869 F.3d 839 (9th Cir. 2017) ........................................................... *passim*

*Hart v. Masanari*,
　266 F.3d 1155 (9th Cir. 2001) ....................................................................9

*In re Anderson*,
　572 B.R. 743 (9th Cir. BAP 2017) .............................................................7

*In re Brown*,
　953 F.3d 617 (9th Cir. 2020) ......................................................... 2, 8, 11

*In re Coomer*,
　375 B.R. 800 (Bankr. N.D. Ohio 2007) ......................................................2

*In re Feiler*,
　218 F.3d 948 (9th Cir. 2000) ......................................................................6

*In re Mihranian*,
　2017 WL 2775043 (9th Cir. BAP June 29, 2017) .....................................13

*In re Neuton*,
　922 F.2d 1379 (9th Cir. 1990) ....................................................................7

*In re Olsen*,
　36 F.3d 71, 73 (9th Cir. 1994) ..................................................................21

## <u>TABLE OF AUTHORITIES - Continued</u>

Page

*In re Pettit*,
217 F.3d 1072 (9th Cir. 2000) ...............................................................7

*In re Pisculli*,
2009 WL 700059 (Bankr. E.D.N.Y. Mar. 4, 2009)
*aff'd*, 426 B.R. 52 (E.D.N.Y. 2010),
*aff'd*, 408 F. App'x 477 (2d Cir. 2011)...................................................5

*In re Pisculli*,
426 B.R. 52 (2010) (E.D.N.Y. 2010)
*aff'd*, 408 F. App'x 477 (2d Cir. 2011).......................................... 3, 11

*In re Plaza de Retiro, Inc.*,
2018 WL 5304724 (Bankr. D. NM Oct. 24, 2018) .............................4

*In re Redf Mktg., LLC*,
536 B.R. 646 (Bankr. W.D.N.C. 2015) ............................................20

*In re Ryerson*,
739 F.2d 1423 (9th Cir. 1984) ...........................................................7

*In re S. Indus. Banking Corp.*,
66 B.R. 349 (Bankr. E.D. Tenn. 1986) ..............................................20

*In re Singh*,
2019 WL 1231146 (B.A.P. 9th Cir. Mar. 14, 2019)..........................12

*Jablon v. Dean Witter & Co.*,
614 F.2d 677 (9th Cir. 1980) .............................................................17

*Keru Investments, Inc. v. Cube Co.*,
63 Cal. App. 4th 1412 (1998) ...........................................................18

*Maricopa–Stanfield Irrigation and Drainage District v. United States*,
158 F.3d 428 (9th Cir.1998) .............................................................19

*Miller v. McColgan*,
17 Cal. 2d 432 (1941) ................................................................ 11, 12

*Nelson v. Anderson*,
72 Cal. App. 4th 111 (1999) ............................................................11

*Pearsall v. Great Northern Ry. Co.*,
161 U.S. 646 (1896)............................................................................4

*Penasquitos, Inc. v. Super. Ct.*,
53 Cal. 3d 1180 (1991) ....................................................... 14, 15, 16

## <u>TABLE OF AUTHORITIES - Continued</u>

Page

*Postal Instant Press, Inc. v. Kaswa Corp.*,
  162 Cal. App. 4th 1510 (2008) ...................................................13

*Rawlings v. Ray*,
  312 U.S. 96 (1941)......................................................................18

*Reilly v. Antonello*,
  852 N.W.2d 694 (Minn. Ct. App. 2014).....................................10

*Reliant Life Shares, LLC v. Cooper*,
  90 Cal. App. 5th 14 (Apr. 4, 2023) ............................................13

*San Leandro Canning Co. v. Perillo*,
  211 Cal. 482 (1931) ...................................................................21

Segal v. Rochelle,
  382 U.S. 375 (1966)..................................................................6, 7

*Wiand v. Lee*,
  753 F.3d 1194 (11th Cir. 2014) .................................................10

### <u>Statutes</u>

11 U.S.C.,
  Section 1123(b)(3)(B)................................................................20

11 U.S.C.,
  Section 549.................................................................................2, 8

California Civil Code,
  Section 14......................................................................................7

California Civil Code,
  Section 17(b)(8) ............................................................................7

California Civil Code,
  Section 3439.01(a) ......................................................................10

California Civil Code,
  Section 3439.01(m).....................................................................10

California Civil Code,
  Section 3439.04(a)(1) .................................................................10

California Civil Code,
  Section 3439.04(j).......................................................................10

California Civil Code,
  Section 3439.13...................................................................... 5, 10

iv

## TABLE OF AUTHORITIES - Continued

Page

California Civil Code,
   Section 654.................................................................................................7

California Civil Code,
   Section 655.................................................................................................7

California Corporations Code,
   Section 2004........................................................................................ 14, 16

California Corporations Code,
   Section 500................................................................................................14

California Uniform Voidable Transfer Act,
   Section 3439...............................................................................................5

Washington Revised Code,
   Section 19.40..........................................................................................5, 9

Washington Revised Code,
   § 19.40.011(2)...........................................................................................10

Washington Revised Code,
   19.40.011(17)............................................................................................10

Washington Revised Code,
   Section 19.40.011(12)...............................................................................10

Washington Revised Code,
   Section 19.40.041(1)(a) ...........................................................................10

The Trustee[1] hereby submits his consolidated reply brief (the "Consolidated Reply")[2] in further support of his appeal of the bankruptcy court's *Partial Final Judgment* (the "Judgment"), entered on October 6, 2022 [**1-ER-28-30**], which Judgment was affirmed by the Bankruptcy Appellate Panel for the Ninth Circuit ("BAP") [**5-ER-904**].

# I.

# INTRODUCTION

The Answering Briefs concede that the sale of Coastal's lone asset, the Wine Estate Property, constituted a Liquidation Event as defined in Coastal's operative Articles. **2-ER-145**. Appellees even concede that the Liquidation Event at a minimum created a contractual right to payment that would have at least allowed the Trustee to sue for the Estate's share of the proceeds of the Liquidation Event (as the sole owner of Coastal), a right that did not exist before the Liquidation Event occurred and a fact that even the BAP recognized:

> Upon the occurrence of a Liquidation Event, the stockholders "shall be entitled to receive" the remaining assets of the company.

> This provision did not make Mr. Brower owner of the Net Proceeds upon sale of the Wine Estate. The Articles provide that he "shall be entitled to receive" a distribution of Coastal's assets. ***This gave him a claim against Coastal for distribution of the assets***, not immediate ownership.

**5-ER-920** (emphasis added); *see also* DktEntry: 31, p. 18 of 43.

---

[1] Initial capitalized terms not defined herein shall have the same meaning as set forth in the Appellant's Opening Brief. DktEntry: 11.

[2] The Consolidated Reply addresses the answering briefs filed by Oldfield Creely, LLP ("Oldfield Creely") [DktEntry: 26], Johnson, Rovella, Retterrer, Rosenthal & Gilles, LLP dba JRG Attorneys at Law ("JRG") [DktEntry: 29], and Aurora Capital Advisors, Richard Babcock and Anthony Nobles ("Aurora") [DktEntry: 31] (collectively, the "Answering Briefs" and Oldfield Creely, JRG, and Aurora, collectively, "Appellees").

The BAP failed to follow its own logic that the Estate had a "claim against Coastal for distribution of the assets"—*i.e.*, its expectancy interest became a vested right upon the Liquidation Event. *See* **5-ER-914** (stating that right was still an expectancy). Appellees and the lower courts conflated actual possession with a right to possession claiming that only the former denotes an asset of the Estate. *See* **5-ER-919**. That is fundamentally wrong under bankruptcy law. Estate assets are often in the possession of others; possession neither conclusively denotes the right to ownership nor dispositively negates the property from being an asset of the estate. *See, e.g.*, *In re Brown*, 953 F.3d 617, 623 (9th Cir. 2020) (funds which the debtor transferred with the fraudulent purpose of avoiding payments to creditors remained in the debtor's constructive possession or control and were property of the converted estate under 11 U.S.C. § 348(f)(1)(A)); *In re Coomer*, 375 B.R. 800, 807 (Bankr. N.D. Ohio 2007) (explaining that 11 U.S.C. § 542(a) allows the trustee to obtain possession of property where the debtor could have obtained possession of the property through legal process). In any event, the Trustee has alleged that after the post-Liquidation Event, Debtor exercised his control over Coastal's assets to enrich his family and friends to the detriment of the Estate.

Whether this Court agrees that the Net Proceeds were an asset of the Estate because the Estate's rights to those proceeds vested upon the occurrence of the Liquidation Event or, alternatively, determines that the Estate merely owned the stock of Coastal, Debtor's looting of Coastal destroyed the value of the Estate's stock and constitutes a post-petition transfer of Debtor's property for which the Trustee may seek to claw back pursuant to 11 U.S.C. § 549, as a disguised dividend, or pursuant to its turnover and conversion claims. *See DZ Bank AG Deutsche Zentral-Genossenschaft Bank v. Meyer,* 869 F.3d 839, 843 (9th Cir. 2017) (transfer by debtor from debtor's non-debtor corporation "depleted the value of [the debtor's] assets to the detriment of his creditors"); *see also* **2-ER-145**

[Coastal's Articles], at § 2; *see also In re Pisculli*, 426 B.R. 52 (2010) (E.D.N.Y. 2010), *aff'd*, 408 F. App'x 477 (2d Cir. 2011) ("liquidation of all of the assets of [debtor's wholly-owned corporation] created equity for the shareholders of that company and, thus, appellant, as A.N. Leasing's owner and direct beneficiary, had full control over the … proceeds"). The Trustee must be empowered to trace Debtor's dissipation of the funds at issue to Appellees as ultimate recipients, which funds should have come into the Estate, and recover such funds from Appellees.

The Trustee's Complaint adequately connected the dots in light of the allegations, including that (i) the Estate was the sole shareholder of Coastal as of the Petition Date [**2-ER-93**, at ¶ 3], (ii) Coastal sold its only asset post-petition [*id.* at ¶ 4], (iii) such sale was a recognized Liquidation Event under the Articles (the equivalent of a liquidation), which contingent event triggered the Estate's right to the $7 million in Net Proceeds from the sale (net of payment or provision of payment of all existing legitimate debts and obligations) at a time when Debtor has sole and unilateral control of Coastal [**2-ER-94**, at ¶ 6], (iv) other than the IRS, on the date of the Liquidation Event Coastal had ***no*** outstanding debts and more than sufficient funds to make provision for the IRS debt with a substantial corpus remaining [**2-ER-114**, at ¶ 99], and (v) Coastal was no longer an operating entity [**2-ER-98** (bankruptcy court found that "it's not an operating entity")].

Appellees attempt to paint the Trustee as an advocate for a broad expansion of property rights under both the Bankruptcy Code and California law. To the contrary, the Bankruptcy Code relies on state law to govern property rights, and California law recognizes that an expectancy right (sometimes referred to as a contingent right), which in this case was the right of the Estate as the sole shareholder of Coastal, transforms into a vested property right when the contingency triggering said right occurs.

3

That is what occurred here: the Estate's expectancy right depended upon the happening of a future event, the Liquidation Event, and when that event occurred, the Estate's rights vested. *See Pearsall v. Great Northern Ry. Co.*, 161 U.S. 646, 673 (1896) (explaining difference between vested rights and expectant or contingent rights); *see also In re Plaza de Retiro, Inc*., 2018 WL 5304724, at *3 (Bankr. D. N.M. Oct. 24, 2018) ("Dividend became estate property when it was declared"). By the Complaint, the Trustee seeks to exercise Debtor's fully vested property right in and to the Net Proceeds, and recover funds from those who improperly received them.

Not only is it alleged that the Estate had a vested right to the Net Proceeds, but the Trustee also alleged that Debtor had exclusive control over the Net Proceeds and that Debtor used this control to loot Coastal and transfer the Net Proceeds to himself, family, friends, and even two suspended California corporations thereby rendering the Estate's stock worthless (when it should have been worth approximately $7 million net of any debts). The uniform fraudulent transfer statute recognizes that Debtor's mere rendering of the stock worthless by exercise of his control of Coastal and his dissipation of assets thereof constitutes a fraudulent transfer recoverable by Debtor's Estate.

As alleged, Debtor admittedly did not use Coastal's assets in furtherance of any ongoing business plan (having filed quarterly reports with the bankruptcy court that no such business plan existed [**2-ER-151-2-ER-196**]) but solely to hinder, delay and defraud the Bank that had obtained a sizeable seven-figure judgment against the Debtor.

Appellees hide behind the BAP's flawed analysis instead of actually attempting to distinguish the Trustee's case law—they cannot. First, the BAP's holding includes fundamental mistakes of law. The BAP refused to consider Ninth Circuit authority [*DZ Bank*] because the holding analyzed the Washington Uniform

4

Fraudulent Transfer Act ("WUFTA") and the BAP claimed without analysis that the result was contrary to California law [1-ER-21]; as discussed below the WUFTA is identical to the California Uniform Voidable Transfer Act ("CUVTA") and mandates the same analysis. *See* Cal. Civ. Code § 3439.13 (the CUVTA mandates that it be "applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it"); *see also DZ Bank*, 869 F.3d at 843 (looking to what other courts that have adopted UFTA "have concluded when faced with similar circumstances"). The BAP repeatedly refused to consider on point case authority, including binding authority, by claiming without analysis that these authorities were "at odds with California law." *See e.g.,* **5-ER-924** (refusing to consider *DZ Bank* and *In re Pisculli*, 2009 WL 700059 (Bankr. E.D.N.Y. Mar. 4, 2009) *aff'd*, 426 B.R. 52 (E.D.N.Y. 2010), *aff'd*, 408 F. App'x 477 (2d Cir. 2011).

Second, the BAP decision improperly rests on "facts" that are contrary to those pled. As one critical example, the BAP states, "As the bankruptcy court held and the Trustee does not deny, Coastal owed outstanding debts, including federal taxes and obligations to Mr. Brower." **5-ER-921**. This misstates the allegations in the Complaint and, further, misses the point. The Trustee alleged that the obligation to Debtor was a fiction created from whole cloth by Debtor in furtherance of his scheme. He was not a legitimate creditor. **2-ER-116**, ¶ 113 ("Debtor fabricated the Debtor Notes to create the illusion of a legitimate transaction"). The Trustee acknowledged in the Complaint that the Estate is not the beneficiary of all of the sale proceeds, but simply those proceeds ***net*** of then-existing creditors.

The importance of this clarification cannot be overstated. The Trustee never asserted a right greater than Coastal's legitimate creditors existing at the time of the Liquidation Event, and acknowledged in the Complaint that his rights were net

of payments to such creditors. After the Liquidation Event, the only creditor was the IRS and Coastal had otherwise ceased operations. The Complaint seeks only to set aside fraudulent transfers—*i.e.* transfers of funds to Appellees who were not legitimate creditors of Coastal at the time of or as a result of the Liquidation Event. No one else but the Estate, as the 100% shareholder of Coastal, had a vested claim to the Net Proceeds at issue in this action. Further to this point, the existence of a debt to the IRS does not diminish the Estate's claim to the Net Proceeds or convert the Estate's interest back into an expectancy right.

It is without dispute—and is adequately pled in the Complaint—that the (1) Debtor had exclusive control of the Net Proceeds, (2) the Estate held a superior claim to the Net Proceeds as the sole shareholder of Coastal over Appellees, and (3) Debtor spent those proceeds as he saw fit, transferring them to non-creditors (the Appellees) to shield these assets from legitimate creditors. See **2-ER-114-2-ER-130**, ¶¶ 97-176. Whether the Estate merely held a "right to sue" Coastal for the proceeds as the BAP held [**5-ER-922**] or whether the Estate was the rightful owner of those proceeds is immaterial; either way, the Estate holds a vested right in and to those proceeds and that right is property of the bankruptcy estate. *See, e.g., In re Feiler*, 218 F.3d 948, 955 (9th Cir. 2000) ("Property is broadly defined by the Bankruptcy Code to include 'all legal or equitable interests of the debtor' . . . [and] the Supreme Court has explained that 'the term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed.' *Segal v. Rochelle*, 382 U.S. 375, 379, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966).") Even contingent interests in property are property of the bankruptcy estate:

> Accordingly, contingent interests of the type at issue in this case typically have been held to be property of the bankrupt estate. For example, in *In re Ryerson,* this court affirmed the BAP's holding that money to which the debtor became entitled eight months after filing for

> bankruptcy should be included in the estate, notwithstanding the fact that at the time of filing the debtor had an unvested, contingent interest. 739 F.2d 1423, 1425 (9th Cir.1984). Similarly, in *In re Dias* the bankruptcy court found that "a beneficial interest in a trust is an equitable interest under § 541(a)(1)" despite the fact that at the time of filing it was contingent. 37 B.R. 584, 586-87 (Bkrtcy.D.Idaho 1984).

*In re Neuton*, 922 F.2d 1379, 1382 (9th Cir. 1990); *see also In re Anderson*, 572 B.R. 743 (9th Cir. BAP 2017) (citing to *Segal* and *Neutron*).

Contract rights are among the interests that become part of the bankruptcy estate. *See, e.g.*, *In re Ryerson*, 739 F.2d 1423, 1425 (9th Cir. 1984). As the Ninth Circuit has held:

> Although the question whether an interest claimed by the debtor is "property of the estate" is a federal question to be decided by federal law, bankruptcy courts must look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case. *See Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Under California law, property is defined as "the thing of which there may be ownership." Cal. Civ. Code, § 654. "The ownership of a thing is the right of one or more persons to possess and use it to the exclusion of others." *Id.*

*In re Pettit*, 217 F.3d 1072, 1078 (9th Cir. 2000). The California Civil Code specifically states that "[t]he word 'property' includes property real and personal" and "[t]he words 'personal property' include money, goods, chattels, things in action and evidences of debt." Cal. Civ. Code § 14; *see also* Cal. Civ. Code § 17(b)(8). Furthermore, "[t]he ownership of a thing is the right of one or more persons to possess and use it to the exclusion of others . . . the thing of which there may be ownership is called property." Cal. Civ. Code § 654. Obligations and rights created or granted by statute are included in things subject to ownership. *See* Cal. Civ. Code § 655. Here, Debtor's ownership interests in Coastal and rights pursuant to the Articles, gave rise to a bundle of rights, including both legal and equitable rights, all of which belong to the Estate.

Stated another way and focusing solely on Coastal's stock, Debtor improperly dissipated Coastal's assets rendering the stock valueless. Thus, the Court should allow the Trustee's claims to proceed, regardless of whether this Court considers the Net Proceeds to be assets of the Estate or merely focuses on the fact that Debtor diluted the value of the Estate's shares in Coastal through improper transfers.

The lower courts elevated form over substance in their respective analyses, and effectively ratified the fraud committed by Debtor, which fraud was known to the Appellees. Indeed, the Aurora group received $1.72 million, Oldfield Creely at least $200,000, and JRG $280,000. The Debtor's family and related entities collectively received over $2.4 million. "The Code reflects a firm policy of not rewarding fraud or bad-faith debtors." *Brown*, 953 F.3d at 623. Legitimate creditors of the Estate should not be left with nothing because of Debtor's fraud, and the recipients of the funds are responsible under either subsequent transferee liability, alter ego theories, or as holders of converted property. The Code mandates a remedy, especially in light of the broad and flexible standard of determining property rights under bankruptcy and California law.

Finally, and contrary to Appellees' assertions in their Answering Briefs, the claims in the Complaint are not time barred. The provisions of the confirmed Plan specifically provided that Estate causes of action, including claims under 11 U.S.C. § 549, shall survive confirmation of the Plan through the Effective Date of the Plan and, further, prohibited the Trustee from bringing such claims (and did not vest in the Trustee the authority to bring such claims) until the Effective Date. Based upon the Plan language, the bankruptcy court properly found that the Trustee's claims were not barred by the statute of limitations having been brought within a year of the Effective Date. Independently, the doctrine of adverse domination

8

would apply to equitably toll any statute of limitations in this case until the Effective Date of the Plan.

The Complaint pleads sufficient facts to state plausible claims for relief. The Trustee respectfully submits that the bankruptcy court erred when it dismissed the Complaint with prejudice and respectfully requests that this Court vacate the Judgment and reverse the Orders of the bankruptcy court.

## II.

## ARGUMENT

### A.  Critical Case Law Disregarded By Lower Courts and Appellees

The Trustee submits that the BAP and Appellees disregarded the weight of case authority demonstrating that the Estate had vested rights in Coastal's liquidated assets and standing to set aside transfers of those assets.  Those transfers included transfers to Debtor, Med-Venture Investments, LLC ("Med-Venture") and Aurora Capital Advisors, LLC ("Aurora LLC") (Med-Venture and Aurora LLC, collectively, the "Suspended Corporations"), to Debtor's son and to others such as lawyers for Debtor, not Coastal, none of whom were legitimate creditors of Coastal at the time of the Liquidation Event.

The BAP reached its conclusion first, and then dispensed with any case authority contra to its foregone conclusion.  It is not simply that the BAP rejected case authorities but that it did so based upon an absence of analysis, including:

1.      *DZ Bank*.  As discussed above, the BAP refused to consider Ninth Circuit precedent[3] on the basis that the Ninth Circuit in *DZ Bank* examined Washington's fraudulent transfer act, the WUFTA, which the BAP mistakenly asserted was "at odds" with the CUVTA.  **5-ER-924**.  The statutes are identical (*i.e.*, uniform); thus, the *DZ Bank* court's holding based on the definitions of asset,

---

[3] "[T]he first panel to consider an issue sets the law not only for all the inferior courts in the circuit, but also future panels of the court of appeals."  *Hart v. Masanari*, 266 F.3d 1155, 1171 (9th Cir. 2001).

property, and transfer in light of what constitutes a fraudulent transfer under the WUFTA would be the same under the CUVTA. Compare Wash. Rev. Code § 19.40.041(1)(a) and Cal. Civ. Code § 3439.04(a)(1) (scope of transfers subject to fraudulent transfer statute), Wash. Rev. Code § 19.40.011(17) and Cal. Civ. Code § 3439.01(m) (defining the term "transfer"), Wash. Rev. Code § 19.40.011(2) and Cal. Civ. Code § 3439.01(a) (defining the term "asset"), and Wash. Rev. Code § 19.40.011(12) and Cal. Civ. Code § 3439.04(j) (defining the term "property").

In *DZ Bank*, the Ninth Circuit found that the debtor's control over a non-debtor corporation and the debtor's transfer of assets from that non-debtor corporation constituted a fraudulent transfer vis-à-vis the debtor. Thus, the Ninth Circuit reached its conclusion applying the same law it would have applied had the matter been presented under California law. There is a false conflict, at best, between California and Washington, but there is nothing at odds between the two that supported summary rejection of this holding by the BAP.

The CUVTA expressly encourages uniformity among the States that have adopted it. Cal. Civ. Code § 3439.13. Consistent therewith, the *DZ Bank* court relied upon out-of-state decisions (predicated on Florida, Minnesota, and South Dakota law) because, as here, they involved identical fraudulent transfer statutes.

Further undermining Appellees' argument, *DZ Bank* relied upon UFTA clawback cases. *See Wiand v. Lee*, 753 F.3d 1194, 1203 (11th Cir. 2014) (debtor's transfers of assets from non-debtor corporation he controlled could have been used to satisfy the debtor's own debt); *Reilly v. Antonello*, 852 N.W.2d 694, 701 (Minn. Ct. App. 2014) (holding that debtor facilitated indirect transfers of corporate stock from corporation to wife to hinder creditors from collecting on judgments against the debtor). As explained by the *Reilly* court:

> Appellants assert that the corporation legally diluted Michael Antonello's shares before the sheriff's sale, but this argument ignores the reality that Michael Antonello

10

> was exclusively responsible for the actions of the corporation and that he fraudulently transferred assets to the detriment of his creditors. To allow a sole director, officer, and shareholder to mask his fraudulent actions behind the façade of a closely held corporation would defy the plain meaning and intent of the Minnesota Uniform Fraudulent Transfer Act.

*Id.* at 701.

2. *In re Pisculli*. The BAP refused to consider an unpublished bankruptcy decision from New York, affirmed by the district court and then the Second Circuit on an almost identical fact pattern, simply because it was an out-of-state case and claiming without citation that New York law was different than California law [**5-ER-925**]. In fact, New York and California law are identical on this issue—that the sale of all of the assets of a wholly-owned corporation creates income for the shareholders, which rights did not exist prior to the sale of assets. *See Nelson v. Anderson*, 72 Cal. App. 4th 111, 126 (1999) ("income [for shareholders] is derived upon the liquidation of assets …"). Indeed, the District Court's *Pisculli* analysis was cited approvingly by the Ninth Circuit. *See Brown*, 953 F.3d at 622 (citing *Pisculli* for proposition that funds from truck sale "that should have been used to repay the debtor's creditors" and transferred without notice to the trustee were estate assets).

3. *Miller v. McColgan*, 17 Cal. 2d 432 (1941). Of note, both sides rely heavily on *Miller*, but reach competing conclusions. The Trustee submits that *Miller* is entirely consistent with Coastal's Articles in recognizing that a shareholder's expectancy interest converts to an ownership interest (a vested right) "when the corporation is liquidated by action of the directors or when a portion of the corporation's earnings is segregated and set aside for divided payments on action of the directors in declaring a dividend." *Id.* at 436.

First, *Miller* cannot be read to stand for the proposition that possession determines ownership. In the two enumerated events, the liquidation and/or the

11

declaration of dividends, the *Miller* court did not require the actual turnover of the asset to find an ownership interest. To the contrary, the *Miller* court assumed the proceeds were still in the possession of the corporation, as it discussed the setting aside of monies to pay dividends not the actual payment thereof. *Id.*

Second, the *Miller* court did not prohibit a corporation's articles from defining a Liquidation Event vesting rights in shareholders to include not only a liquidation or declared dividend but also other events such as the liquidation (sale) of all or substantially all of a corporation's assets, the acquisition of Coastal by another entity, or the transfer of more than 50% of voting power as creating a vested interest. The California Corporations Code does not define the term liquidation and nothing in the *Miller* decision prohibits the definition provided by Coastal in its Articles to provide for payments to equity holders upon the happening of an enumerated event—the sale of substantially all of Coastal's assets—in the same manner as a liquidation.

Third, *Miller* dealt with an operating entity, unlike Coastal, which sold its only asset and was a non-operating entity with a bank account. **4-ER-763**. The Appellees and BAP cite this case but failed to acknowledge that the "liquidation" identified in *Miller* was deemed under the Articles to be the equivalent of a sale of all assets. Both were defined "Liquidation Events" that gave the Estate the vested right to the Net Proceeds.

The assertion that it was a "contractual" right, as if this diminishes the Estate's rights, is unavailing. The Articles also provided for the payment to shareholders upon the declaration of a dividend; *i.e.*, a contractual right. Nevertheless, that right to a declared dividend payment was identified by *Miller* as vesting an ownership interest in the shareholders to those proceeds.

4. *In re Singh*, 2019 WL 1231146, at *6 (B.A.P. 9th Cir. Mar. 14, 2019). The BAP claimed that this case was a concealment case and a reverse piercing

12

case.  It was neither.  Rather, *Singh* involved the question of whether the corporation's assets could be deemed assets of the individual debtor's estate and, thus, form the basis for denial of a discharge—the same analysis performed by the *Pisculli* court.  *See id.* ("***But the doctrine can also be employed to determine whether a corporation or its shareholder is the true owner of property***."); *see also id.* at \* 7 (the bankruptcy court found that "although SVA once was a legitimate business operation, [Mr. Singh] increasingly used SVA for his own personal Ponzi scheme banking operation .... The existence of SVA became meaningless except as a tool to implement fraud.").  Thus, the non-debtor corporation was found to be the alter ego of the individual who was using the corporation for his own personal benefit.   As alleged in the Complaint, after Coastal sold its lone asset it had no operations and Debtor (who controlled Coastal) dissipated its assets to persons and entities who had no legitimate legal claim to the monies and did so to thwart collection of a judgment then pending against Debtor.

5.     *In re Mihranian*, 2017 WL 2775043 (9th Cir. BAP June 29, 2017). The BAP was similarly incorrect in holding that reverse piercing was prohibited under California law based on *Mihranian* that, in turn, relied upon *Postal Instant Press, Inc. v. Kaswa Corp.*, 162 Cal. App. 4th 1510 (2008).  The holding in *Curci Investments, LLC v. Baldwin*, 14 Cal. App. 5th 214, 220 (2017), finding that reverse piercing is viable under California law and limiting *Postal* to its facts, was issued two months after *Mihranian*.  *See also Blizzard Energy, Inc. v. Schaefers*, 71 Cal. App. 5th 832, 847 (2021) ("no reason to depart from [*Curci's*] sound analysis"); *Reliant Life Shares, LLC v. Cooper*, 90 Cal. App. 5th 14, 38 (Apr. 4, 2023) (outside reverse piercing available "where the entities are closely held and controlled by the individual who engaged in the wrongdoing").  The concern raised by *Curci* ring hollow here because there is no innocent shareholder or creditor "that could be affected by reverse piercing here."  *Curci*, 14 Cal. App. 5th at 222.

Combined, these cases provide the foundation for concluding that the Estate had a right to the Net Proceeds and Debtor was not free to loot his wholly-owned and controlled corporation in order to evade his creditors. In short, the Trustee has the right to seek to recover the transferred Net Proceeds from any person or entity who received any of the Net Proceeds where such person or entity was not paid as a result of a legitimate debt or obligation owed by Coastal at the time of or as a result of the Liquidation Event.

**B. Section 2004 of the California Corporations Code and *Penasquitos* are Wholly Consistent with the Trustee's Position**

Appellees claim that if the Articles dictated a distribution to the shareholders as a result of a Liquidation Event, this interpretation would render the Articles "contrary to Cal. Corp. Code § 2004 and unenforceable as a result." DktEntry: 31, p. 19 of 43. The argument lacks merit, as Coastal was not dissolved or wound up. Nevertheless, nothing in the Articles nor the Trustee's argument thereon serves to displace the priority scheme as between legitimate creditors and shareholders that would apply in a dissolution or, alternatively, the payment of a dividend. *See* Cal. Corp. Code § 500.

As pled, the Liquidation Event vested in the Estate the right only to the portion of those proceeds remaining from the sale of the Wine Estate Property net of the payment of known debts and liabilities (the Net Proceeds); the Liquidation Event converted the Estate's inchoate right into a vested right in the Net Proceeds.

Nothing however under the Articles, statutory authority or case authority vested any right in non-legitimate creditors of Debtor to any of the proceeds of the sale of the Wine Estate Property. In this regard, Appellees, not the Trustee, take liberties with both Section 2004 and *Penasquitos, Inc. v. Super. Ct.*, 53 Cal. 3d 1180, 1191 (1991) in two respects.

14

First, *Penasquitos* simply holds that a distribution cannot take place until provision has been made for all known debts and obligations. *Id.* Appellees' arguments presume they are legitimate creditors of Coastal. As alleged in the Complaint, Coastal owed no debt or obligation to any of the Appellees. As but one example, the BAP claims that the Trustee admitted that Debtor was owed money at the time of the Liquidation Event. **5-ER-921**. Not true. The Trustee alleged that the alleged debts claimed owed to Debtor were simply part of his scheme to fraudulently transfer the Net Proceeds out of the reach of his creditors. See **2-ER-116**, at ¶ 113. Further, the Trustee detailed how Debtor created fake promissory notes for which Coastal never received consideration and then used the proceeds for his own personal benefit. *See, e.g.*, **2-ER-117**, Complaint, at ¶¶ 115-117; **2-ER-118-119**, Complaint, at ¶¶ 123-125.

As another example, the Trustee alleged that the "debts" purportedly owed to the Suspended Corporations, which were owned by friends of Debtor who previously had falsely claimed to have an ownership interest in Coastal [**2-ER-197-2-ER-213** and **2-ER-214-2-ER-222**], were not legitimate debts. The work to be performed by the Suspended Corporations, duplicative in nature, was to be performed, if at all, at a time when they were suspended under California law, they were not qualified to do the work they were allegedly retained to perform, they performed no work, and a third party was hired and paid to perform the work for which Debtor allegedly retained both Suspended Corporations. **2-ER-125-2-ER-126,** at ¶ 85, **2-ER-124**, ¶¶ 153-156.

Second, the mere fact that the sole remaining creditor, the IRS, had not yet been paid from the proceeds of the sale of the Wine Estate Property is immaterial, because the payment had been "provided for." Appellees argue, without authority, that the mere existence of one unpaid creditor provides Debtor with a license to steal until such time as that creditor is paid and Coastal formally dissolves. While

15

the payment or provision of payment to the IRS might affect the timing of the Estate's receipt of the Net Proceeds, nothing in Section 2004 or *Penasquitos* provides that this interim period—between the receipt of the sale proceeds and provision for known debts and obligations—affects the Estate's ownership right to the funds.

Indeed, the Complaint alleges that many of the payments made by Debtor with the Net Proceeds were incurred ***after*** the IRS was paid. Appellees cite no authority for the proposition that Coastal, a non-operating entity, could take on new debts once the IRS was paid. Further, the Trustee has alleged that the transfers to Appellees were not on account of legitimate debts of the corporation. For example, one of the law firms was paid by Coastal for work performed on behalf of Debtor, not Coastal, beginning in 2018. **2-ER-126**, at ¶¶ 158, 159.

In sum, nothing in Section 2004 or *Penasquitos* conflicts with the Articles. Neither provide for Coastal (via Debtor) to incur new debts—let alone fake debts—***after*** the Estate's rights vested as a result of the occurrence of the Liquidation Event.

Here, the Complaint provides details as to why the Appellees were not legitimate creditors of Coastal, either at the time of or as a result of the Liquidation Event, or thereafter. On a motion to dismiss at the pleading stage, the Trustee's factual allegations detailing that none of the Appellees were creditors of Coastal was required to be "accepted as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, the lower courts turned the Rule 12(b)(6) standard on its head by refusing to accept as true the Trustee's allegations, and instead improperly drew inferences against the Trustee.

16

**C.    The Claims in the Complaint are Not Barred by the Statute of Limitations**

Appellees argue that even if the bankruptcy court erred in finding that the Complaint did not adequately plead that the Net Proceeds were property of the Estate, such error was harmless because the claims in the Complaint are time barred.  This argument was raised by Appellees in connection with the First Motion to Dismiss and the bankruptcy court correctly rejected this argument.  **3-ER-479**.

When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.  *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).  In contrast, where the statute of limitations question turns on factual issues that may be disputed, the question is more appropriately addressed at a later stage of the proceeding.  *See id.*  Here, the Complaint adequately pleads that the statute of limitations had not accrued and was otherwise tolled under two theories: (i) the provisions of the Plan; and (ii) the doctrine of adverse domination.

1.    The Provisions of the Plan Establish that the Claims Did Not Accrue and the Statute of Limitations Was Otherwise Tolled until the Effective Date

Appellees argue that the Trustee was appointed on November 2, 2017, and "no extraordinary circumstances justify bring[ing] suit over four years after the statute of limitation lapsed."  DktEntry: 31, p. 11 of 43.  However, Appellees conveniently ignore the express prohibition in the Plan preventing the Trustee from suing on these claims—or even having standing to sue on these claims—until the Effective Date.  **4-ER-699** ("Liquidating Trustee will not have authority over such Causes of Action (including the Estate Enhancement Action) on the Confirmation Date, but will only have such authority if and when the Effective Date occurs"); *id.* (Liquidating Trustee only provided standing "on and after the Effective Date" with

respect to all Causes of Action); **4-ER-698** ("Stage two will occur on the Effective Date, at which time all assets of the Debtor's estate shall be transferred to the Liquidating Trust, including without limitation the following: (a) all tangible and intangible assets of every kind and nature, including Causes of Action,. . ."). "Causes of Action" include "avoidance causes of action under Bankruptcy Code sections . . . 542 . . . 549 . . . and other claims held by Debtor's estate." **4-ER-685**. Thus, Appellees' claim that the Trustee was not diligent [DktEntry: 31, p. 11 of 43] is revealed as sophistry in light of the express terms of the Plan.

It is axiomatic that "[a] cause of action accrues at the moment the party who owns it is entitled to bring and prosecute an action thereon. [Citations.]" *Keru Investments, Inc. v. Cube Co.*, 63 Cal. App. 4th 1412, 1423 (1998) (quoting *Collins v. County of Los Angeles,* 241 Cal. App. 2d 451, 454 (1966)). "A limitations period ordinarily does not begin to run until the plaintiff has a 'complete and present cause of action.'" *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of California*, 522 U.S. 192, 201 (1997) (quoting *Rawlings v. Ray*, 312 U.S. 96, 98 (1941)). "A cause of action does not become 'complete and present' until the plaintiff can file suit and obtain relief." *Id.*, 522 U.S. at 201.

Consistent with the Plan, the Complaint alleges, as follows:

> [U]nder the Plan, the Liquidating Trustee did not have authority to prosecute any causes of action held by Debtor's estate until the effective date of the Plan, which was September 15, 2020 [Bankr. Doc. 271]. The Plan specifically contemplates that the causes of action . . . shall survive entry of the Confirmation Order for the benefit of Debtor's estate, and on and after the effective date, for the benefit of the Liquidating Trust and its beneficiaries….

**2-ER-97**, at ¶ 20. Appellees make no argument that the claims are untimely based on the Effective Date. Indeed, the Trustee did not have Article III standing to initiate any of the fraudulent transfer claims until September 2020. "Article III standing is a jurisdictional prerequisite." *Maricopa–Stanfield Irrigation and*

18

*Drainage District v. United States*, 158 F.3d 428, 433 (9th Cir. 1998). The Plan provided a unique mechanism that only vested standing in the Trustee as of the Effective Date. In short, no one had a right to bring the causes of action identified in the Plan and were held in abeyance until the Effective Date.

Recognizing the fatal flaw in their statute of limitations argument, Appellees contend that the Trustee could have sought standing by bringing a motion to modify or amend the Plan. DktEntry: 31, p. 13 of 43. The argument concedes that under the Plan, the Trustee had no authority to prosecute claims. Appellees cite no basis for an affirmative duty to bring a motion to modify or amend the Plan. In this regard, Appellees' arguments regarding the Trustee's knowledge (or lack thereof) are a red herring. The Trustee's knowledge is irrelevant under the terms of the confirmed Plan because the Trustee was expressly barred from prosecuting any claim on behalf of the Estate until the Effective Date and the Trustee was bound by the provisions of the Plan.

Further, the Plan recognized that there would be some time between the confirmation and the effective date of the Plan; thus, the Plan contemplated that these claims would be tolled until the Effective Date, as follows:

> Any and all Causes of Action shall survive entry of the Confirmation Order for the benefit of the Debtor's estate and, on and after the Effective Date, for the benefit of the Liquidating Trust and its beneficiaries.

**4-ER-700**. Thus, the Aurora Defendants' contention that the Plan does not use the "words 'toll,' 'tolled,' or 'tolling'" is of no moment. DktEntry: 31, p. 12 of 43. As written, the Plan prohibited the prosecution of these claims until the Effective Date and then vested in the Trustee the right to proceed on these claims. To suggest that the limitations period ran between the Confirmation Date and Effective Date when

19

the Trustee was barred from bringing these actions is an inherently unreasonable interpretation of the Plan and the law.

Moreover, contrary to JRG Attorneys' assertion that the Plan's tolling of the statute of limitations is not enforceable, Section 1123(b) of the Bankruptcy Code authorizes post-confirmation pursuit of a debtor's bankruptcy causes of action. *See* 11 U.S.C. § 1123(b)(3)(B) ("a plan may ... provide for ... the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any ... claim or interest"); *Citicorp Acceptance Co. v. Robison,* 884 F.2d 1323, 1327 (10th Cir. 1989) (representative designated in a confirmed plan of reorganization may assert section 544(b) "as a claim of the estate for purposes of § 1123(b)(3)(B)"); *Duvoisin v. East Tenn. Equity Ltd.,* 59 B.R. 638, 642 (Bankr. E.D. Tenn. 1986) ("[The] aim [of section 1123(b)(3)(B)] was to *make possible the formulation and consummation of a plan before completion of the investigation and prosecution of causes of action such as those for previous insider misconduct and mismanagement of the debtor.* Thus, the statute was in furtherance of the purpose of preserving all assets of the estate while facilitating confirmation of a plan.") (emphasis added).

JRG Attorneys additionally argues that a chapter 11 plan cannot toll the statute of limitations "where the parties whose rights are impacted received no notice and no opportunity to object to the limitation of their rights." DktEntry: 29, p. 31 of 42. This argument directly contradicts relevant case authority. *See*, *e.g.*, *In re Redf Mktg., LLC*, 536 B.R. 646, 655 (Bankr. W.D.N.C. 2015) (finding that transfer avoidance defendants were not entitled to notice of the bankruptcy proceedings); *In re S. Indus. Banking Corp.*, 66 B.R. 349, 361 (Bankr. E.D. Tenn. 1986) ("Formal notice of bankruptcy proceedings to potential preference defendants has never been customary and perhaps never considered previous to this case. This court is confident that neither Congress nor the Bankruptcy Rules

Committee envisioned formal notice of bankruptcy proceedings to transferees of avoidable transfers or their participation in reorganization proceedings until disgorgement of the avoidable transfer.").

The bankruptcy court's interpretation of the provisions of the Plan that the statute of limitations had not begun to run or was otherwise tolled was correct as a matter of contract interpretation and law. The Trustee timely filed the Complaint less than one year after the Effective Date.

2.      Alternatively, the Statute of Limitations was Tolled Under the Adverse Domination Doctrine

The Plan does not expressly vest anyone with the right to bring avoidance claims after confirmation of the Plan and prior to the Effective Date. Assuming Debtor was vested with such rights, he was the very individual accused of the scheme to fraudulently transfer assets of the Estate, and the doctrine of adverse domination would apply.

The Complaint sufficiently alleges the elements of adverse domination. It is a "well-settled principle of [California] law[] that the statute of limitations does not commence to run against unlawful acts and expenditures made by or under the direction of the directors of the corporation while they were in full control of its affairs and of the expenditure of its funds." *San Leandro Canning Co. v. Perillo*, 211 Cal. 482, 487 (1931); *see also, e.g., In re Olsen,* 36 F.3d 71, 73 (9th Cir. 1994) (every case to consider the issue has held equitable tolling principles apply to section 549(d)). The adverse domination tolling ends once the wrongdoers are no longer in control of a corporation and its use of funds. As alleged, Debtor and his wife were the only directors of Coastal [**2-ER-100**, ¶ 38] and without court approval Debtor purported to control Coastal's operations and its funds until the Trustee was elected as sole director in September 2020 [**2-ER-137**, ¶ 203]. These allegations are sufficient to show that the statute of limitations was tolled until

September 15, 2020—assuming the statute of limitations could have started to run before the Effective Date.

## III.

## CONCLUSION

The Trustee respectfully requests that this Court enter an order vacating the Judgment and reversing the Orders of the bankruptcy court, and grant to the Trustee such other relief as this Court deems just and proper under the circumstances.

Dated:  November 3, 2023                    BG LAW LLP

By: _____
        Steven T. Gubner
        Jason B. Komorsky
        Jessica L. Bagdanov
        Jessica S. Wellington
        Attorneys for Michael G. Kasolas,
        Liquidating Trustee for the Robert
        Brower, Sr. Liquidating Trust and
        Appellant

22

## IV.

## CERTIFICATION OF COMPLIANCE

The text in this brief is proportionally spaced. The typeface is Times New Roman, 14-point. The word count generated by Word for the portions subject to the restrictions of Circuit Rule 32-1, inclusive of text and footnotes, is 6,999.

Dated: November 3, 2023                    BG LAW LLP

By: _____
   Steven T. Gubner
   Jason B. Komorsky
   Jessica L. Bagdanov
   Jessica S. Wellington
Attorneys for Michael G. Kasolas,
Liquidating Trustee for the Robert
Brower, Sr. Liquidating Trust and
Appellant

23

| 9th Circuit Case Number(s) | 23-60022 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) November 3, 2023 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)  /s/ Mela Galvan

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)            .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)